**GUIDING EYES FOR the BLIND, INC.**
Appellant,

v.

**GUIDE DOG FOUNDATION FOR the BLIND, INC., Appellee.**

Patent Appeal No. 7816.

United States Court of Customs
and Patent Appeals.

Nov. 2, 1967.

Raphael Semmes, Washington, D. C. (G. Mallet Prevost, Washington, D. C., of counsel), for appellant.

Joseph Y. Houghton, Hall & Houghton, Washington, D. C., for appellee.

Before WORLEY, Chief Judge, RICH, SMITH and ALMOND, Judges, and WILLIAM H. KIRKPATRICK.[*]

SMITH, Judge.

The single issue here is whether appellant has established its right to registration of the service mark "GUIDING EYES" as against appellee's right to register the same mark. The issue was determined and decided against appellant by the Trademark Trial and Appeal Board in an interference proceeding, pursuant to 15 U.S.C. § 1067 [1] and Rule 2.96 of the Trademark Rules of Practice.[2]

Appellant (referred to below as "Guiding Eyes"), and appellee (referred to below as "Guide Dog"), have used the mark in issue in connection with their respective activities relating to the training

---

[*] Senior District Judge, Eastern District of Pennsylvania, sitting by designation.

[1] § 1067. *Interference, opposition, and proceedings for concurrent use registration or for cancellation; notice; Trademark Trial and Appeal Board*

In every case of interference, opposition to registration, application to register as a lawful concurrent user, or application to cancel the registration of a mark, the Commissioner shall give notice to all parties and shall direct a Trademark Trial and Appeal Board to determine and decide the respective rights of registration.

    \*      \*      \*      \*      \*

[2] *2.96 Issue; burden of proof.* The issue in an interference between applications shall be the respective rights of the parties to registration. The issue in an interference between an application and a registration shall be the same, but in the event the final decision is adverse to the registrant, a registration to the applicant will not be authorized so long as the interfering registration remains on the register. The party whose application or registration involved in the interference has the latest filing date (the junior party) will be regarded as having the burden of proof.

and use of guide dogs for the blind.[3] Testimony was taken by both parties and the Trademark Trial and Appeal Board awarded the right to register the mark to appellee, 146 USPQ 611 (TTAB 1965). Appellant appeals.

Appellant concedes that appellee was the first to use the mark, but argues:

* * * However, as the record will show the question of first use is not, of itself, the primary issue in this case. Rather, the sole issue to be determined is whether or not Appellee, who was admittedly the first user of this term, forfeited its rights in the mark by its failure over a period of years to use the mark in a manner calculated to identify Appellee as the source of the services offered.

The board held that appellee had not abandoned the mark.

The Trademark Act of 1946, as amended, provides, in pertinent part, that a mark shall be deemed to be "abandoned":

(a) When its use has been discontinued with intent not to resume. Intent not to resume may be inferred from circumstances. Nonuse for two consecutive years shall be prima facie abandonment. (15 U.S.C. § 1127).

No issue is raised as to appellee's exclusive and prior use of the mark for the period extending from on or about July 4, 1949 to September 1955. During this period, the record establishes that appellee used the mark "GUIDING EYES" and the design of a dog's head on its letterheads and promotional material, as well as on its guide dog harnesses. The mark also was shown on a sign on its training center property and on signs in its offices. The mark was being used in 1952 when a documentary film entitled "SECOND SIGHT," was produced in cooperation with appellee. This picture was shown in RKO Theaters throughout the country to publicize the training and use of guide dogs for the blind. Appellee purchased six of these films for its own use in soliciting contributions from the general public. Later, a second film having the same title and showing the services of appellee was produced by Gaines Dog Research Center and this film was being shown before groups of persons throughout the country as late as 1964. Both films include pictures of the sign at appellee's training center.

The success of the films caused appellee to consider adoption of the mark "SECOND SIGHT" for its services. Appellee's executive committee in a meeting in September 1955 discussed this matter, for the minutes of that meeting show:

The use of "Second Sight" was discussed, and it was agreed that "Guiding Eyes" be continued with "Second Sight" interjected wherever feasible in publicity.

It is appellant's position that, following this executive committee action in September 1955, appellee abandoned the mark in issue by replacing it with the mark "SECOND SIGHT." Thus, it is appellant's contention that when it adopted and began use of the mark "GUIDING EYES" in November 1956, it was free to do so.

■ Appellant, as the junior party, had the burden of proving appellee's abandonment of the mark. Appellant's evidence consists of the testimony of various witnesses, together with some

---

3. The application of the appellee (senior party), Serial No. 119,125, was filed May 2, 1961 for "Guilding Eyes," and asserts use since on or about July 4, 1949. The application of the appellant (junior party), Serial No. 143,228, was filed April 27, 1962 for the service mark "Guilding Eyes for the Blind, Inc." and design and asserts use since November 1956. While there is a variation in the precise wording of the applications as to the nature of the services rendered, each of the parties is involved in rendering the same types of services, i. e., training guide dogs for the blind and in training blind persons in the use of such dogs. No issue has been raised by the parties concerning differences in the marks, the parties apparently conceding that "Guilding Eyes" is the dominant feature of both marks. Each party is a charitable non-profit organization whose principal income is derived from tax-exempt charitable gifts.

documentary material. In summary, this evidence is that one witness, who had voluntarily performed public relations services for appellee in connection with the mark "SECOND SIGHT" for several years in the late 1950's, stated that he had never seen the mark "GUIDING EYES" on any of appellee's literature and had no knowledge of its use of such term. Another of appellant's witnesses was a blind person who testified in effect that she was presently using one of appellee's guide dogs, and at some undisclosed time in the past, had used guide dogs procured from appellant. She then stated that she only knew of appellee by the name "SECOND SIGHT."

Appellant also offered documentary evidence of appellee's use of the mark "SECOND SIGHT" on its letterheads, news releases, newsletters, advertisements, book marks and membership cards.

Appellee's evidence establishes that during the period from 1946–1949, it maintained a training center for guide dogs at Woodside, New York, on which it placed a conspicuous sign with the wording "GUIDING EYES" above the representation of a dog's head. In 1950, it moved its training center to Smithtown, Long Island, and this sign was moved to a location adjacent to the new training center. The sign remained in this location until the middle of 1955 when it was moved to the interior of appellee's property where the sign has remained from that time until the present. This sign is shown in the two documentary films which were being shown in 1964. In addition, appellee's testimony establishes that door placques or plastic signs showing the mark "GUIDING EYES" have been used continuously on appellee's administrative offices in Forest Hills, New York, since the middle 1950's.

Appellee also took the testimony of several blind persons who have, at one time or another, used its services. These persons testified in effect that to them "GUIDING EYES," "SECOND SIGHT," and "Guide Dog Foundation for the Blind" are all terms by which appellee had been and was, at the time of the testimony, being identified. All were familiar with the mark "GUIDING EYES" because they had been made aware that this mark was embossed on the harnesses and used on the identification tags for their guide dogs. Throughout the entire period, the mark "GUIDING EYES" also was used on the identification cards supplied to blind persons using appellee's guide dogs. When Mrs. Stephens' testimony was taken in June 1964, she produced the same dog harness which had been given to her by appellee in 1955 with her guide dog "Dutchess." "Dutchess" had died about a year prior to her testimony (apparently sometime in 1963) but the harness which Mrs. Stephens produced and which had been in use until the death of "Dutchess" had the legend "Guiding Eyes, Forest Hills, N.Y." embossed on the handle.

The board found that the appellee had presented a prima facie showing it was the first user of the mark "GUIDING EYES" and that the mark had been used continuously to identify its services. It found that appellee never had intended to abandon the mark although it had used "SECOND SIGHT" on its letterheads and other written materials since 1956. The board particularly pointed out that *no period of actual non-use* by appellee had been proved.

We have considered the facts of record in the light of the foregoing portion of the statutory definition of abandonment and agree with the board that an abandonment arising from appellee's alleged *discontinuance* of the mark "GUIDING EYES" has not been proved.

The Trademark Act of 1946, as amended, also recognizes that "abandonment" may arise:

(b) When any course of conduct of the registrant, including acts of omission as well as commission, causes the mark to lose its significance as an indication of origin. (15 U.S.C. § 1127).

As the issue is here framed, appellee's conduct is relevant to that issue only as it bears on the question of its abandonment of the mark. The board found that

appellee's use of "GUIDING EYES" over the years had been sufficient in nature to maintain this term as an identifying mark of the appellee.

The record as a whole does not show that appellee's "course of conduct" had *caused* the mark "to lose its significance as an indication of origin." This defect in the record is not cured by appellant's reliance on the equitable principles of laches, estoppel and acquiescence under 15 U.S.C. § 1069. Under 15 U.S.C. § 1127 it is necessary to establish that the conduct of appellee was such as to cause a loss in significance of its mark as an indication of origin. The present record fails to do so.

Under these circumstances, we agree with the decision of the board that appellant failed to establish abandonment of the mark by appellee, and thus failed to discharge its burden of proving priority of its right to register the mark.

For the foregoing reasons and to the extent indicated, the decision of the board is affirmed.

AFFIRMED