153 F.Supp.2d 1082 (2000)
SOLUTECH, INC., Plaintiff,
v.
SOLUTECH CONSULTING SERVICES, INC., Defendant.
No. 4:99-CV-1865 CAS.
United States District Court, E.D. Missouri, Eastern Division.
December 15, 2000.
*1083 *1084 Stefan J. Glynias, Dean A. Stark, Lashly and Baer, P.C., St. Louis, MO, Robert M. Evans, Jr., Keith A. Rabenberg, Paul A. Maddock, Senniger and Powers, St. Louis, MO, Daniel K. Barklage, Barklage and Barklage, St. Charles, MO, J. Donald Best, Christine Cooney Mansour, Michael and Best, Madison, WI, for Solutech, Inc., plaintiffs.
Steven H. Schwartz, John D. Briggs, Jeffrey L. Rousseau, Brown and James, P.C., St. Louis, MO, Jill M. Pietrini, Manatt and Phelps, Los Angeles, CA, for Solutech Consulting Services, Inc., defendants.

FINDINGS OF FACT AND CONCLUSIONS OF LAW
SHAW, District Judge.
This matter is before the Court on defendant Solutech Consulting Service's motion for a preliminary injunction. On December 7, 2000, a hearing was conducted on the matter. The Court will grant defendant's motion and impose the preliminary injunction. The following will serve as the Court's findings of fact and conclusions of law.

I. FINDINGS OF FACT
1. Randall Schilling first used the name SOLUTECH in St. Charles, Missouri on August 8, 1992. At that time, the focus of Schilling's business was providing computer software application training, primarily to the public at a training center.
2. Walter Schenk started Solutech Consulting Services, Inc. ("Solutech Consulting") under the name SOLUTECH on March 7, 1994. Solutech Consulting was originally headquartered in Alamo, California, a suburb of Oakland in the Bay Area of California.
*1085 3. The focus of Solutech Consulting is to provide business management consultation services in the fields of data processing and management information systems, and for computer programming services.
4. Solutech Consulting sends its representatives to the customer sites to perform the requested services. Solutech Consulting does not provide public training courses on computer software applications.
5. On March 7, 1994, Schenk obtained the first contract for Solutech Consulting to provide consulting services in Mountain View and San Jose, California, and Raleigh, North Carolina. On that same day, Schenk obtained a fictitious name registration in the name SOLUTECH from the Contra Costa County, California.
6. Starting on or about March 7, 1994, Mr. Schenk began calling on potential customers in the Bay Area and throughout California to obtain business for Solutech Consulting.
7. On August 26, 1992, Plaintiff entered into an agreement with Gupta Technologies, Inc., a computer software company based in the Bay Area. The agreement provided that the parties shall act as independent contractors and Plaintiff and Gupta were not partners, agents or in any other legal relationship. The agreement with Gupta gave Plaintiff the opportunity to teach courses regarding Gupta software and to hold itself out as a Gupta training partner. The agreement required Plaintiff to pay Gupta a certification fee and royalties for all fees Plaintiff charged to teach Gupta classes.
8. Plaintiff did not invoice services or products to Gupta. Rather, prior to March 1994, Plaintiff provided Gupta consulting and training on Gupta software to other companies in Missouri, Illinois and Louisiana, and once in San Francisco.
9. On June 12, 1994, after Solutech Consulting's date of first use, Plaintiff entered into an agreement with Sybase, Inc. The agreement gave Plaintiff the authority to hold itself out as an "Authorized Sybase education provider," for training services on Sybase software in St. Louis, Missouri. The agreement provided that plaintiff was an independent contractor. As with the Gupta agreement, the agreement with Sybase required Plaintiff to pay Sybase for class materials and program and certification fees.
10. Prior to July 1994, Plaintiff did not invoice any products or services to Sybase.
11. Plaintiff subsequently opened a training center in Shawnee Mission, Kansas, a suburb of Kansas City.
12. On July 1, 1994, Solutech Consulting was incorporated in California.
13. To develop its business, Plaintiff entered into contracts with various software manufacturers to both sell the manufacturer's software and provide training courses in the use of the software. Plaintiff acts as an independent contractor.
14. On March 28, 1995, Solutech Consulting obtained registration of the domain name with the predecessor to Network Solutions, Inc. The domain name may be used for email addresses and for a website address on the World Wide Web.
15. Immediately upon receiving registration of the domain , Solutech Consulting began using the domain name for its email addresses. About one month after obtaining the domain name registration, Solutech Consulting began using the domain name for its website www.solutech.com.
16. Plaintiff subsequently opened training centers in Omaha, Nebraska and Des Moines, Iowa.
*1086 17. On January 11, 1996, Plaintiff obtained the domain name registration for .
18. In February 1996, a trademark search was performed for Solutech Consulting by Thomson & Thomson, which produced a report. The report revealed the existence of Plaintiff, among other entities using the name SOLUTECH. The report showed Plaintiff as a computer company with offices in St. Charles, Shawnee Mission, and Omaha.
19. Based on the search, Solutech Consulting investigated the third party uses of the mark, including Plaintiff. In Solutech Consulting's investigation into the trademark search results, Mr. Schenk viewed Plaintiff's website at www.solutechinc.com which, at that time, had been online for only about a month, and found what appeared to be a small company offering public training courses at its four training centers located in St. Charles, Shawnee Mission, Omaha, and Des Moines, Iowa. There was no indication from the website that Plaintiff was doing business anywhere but in those four Midwestern locations, or that Plaintiff had any priority over Solutech Consulting.
20. There was no likelihood of confusion between the companies when Solutech Consulting submitted its trademark application with the PTO on March 14, 1996. At that time, Plaintiff was a regional company with four Midwestern offices. Plaintiff had not yet heard of Solutech Consulting and, but for the trademark search, Solutech Consulting would not have heard of Plaintiff. Neither company had ever come up against the other in any competitive situation, and neither was aware of any actual confusion that had occurred by that time.
21. On March 14, 1996, since it had been continuously using the mark SOLUTECH in commerce since March 7, 1994, Solutech Consulting submitted its application with the United States Patent and Trademark Office ("PTO") for the mark SOLUTECH.
22. On April 29, 1996, Solutech Consulting registered the mark SOLUTECH with the California Secretary of State for data processing consulting services and for computer programming services.
23. On November 12, 1996, Solutech Consulting's federal application to register SOLUTECH was published for opposition by the PTO. No oppositions were filed with the PTO.
24. On February 4, 1997, the PTO issued the federal registration in the mark SOLUTECH to Solutech Consulting.
25. Solutech Consulting has customers throughout California. Solutech Consulting has or has had customers in other states, including Oregon. Solutech Consulting is actively expanding its business in Oregon.
26. In 1999, Plaintiff showed an interest in opening training centers on the west coast. On October 15, 1999, an attorney for Plaintiff contacted Solutech Consulting to express an interest in buying the mark SOLUTECH. Solutech Consulting, as the federal registrant, responded to the attorney's letter by sending Plaintiff a letter to cease and desist using the name SOLUTECH in connection with its services.
27. Without any further communication, on December 1, 1999, Plaintiff filed this lawsuit against Solutech Consulting.
28. In January 2000, Plaintiff opened a training center in Sacramento, California under the name RL SCHILLING, approximately 80 miles from Solutech Consulting's headquarters.
29. In July 2000, Plaintiff began using the name SOLUTECH in connection with its training center, despite its proximity to Solutech Consulting's headquarters and *1087 the pending litigation. Additionally, Plaintiff has advertised its classes and services for the Sacramento office through its website, and Plaintiff has placed employment advertisements in the Sacramento Bee, the major local newspaper. Plaintiff is also placing advertisements in the Sacramento Business Journal.
30. In July 2000, Solutech Consulting learned that Plaintiff had begun using the name SOLUTECH in connection with its services.
31. Solutech Consulting also learned that Plaintiff intended to open training centers in San Diego and Portland, Oregon. In or about September 2000, Plaintiff opened its training center in San Diego.

II. CONCLUSIONS OF LAW
1. To determine whether a preliminary injunction should issue, this Court must consider: (1) the likelihood of success on the merits; (2) the threat of irreparable injury to Solutech Consulting if the preliminary injunction is denied; (3) the balance of irreparable harm to Solutech Consulting and the injury, if any, that granting the injunction might inflict on Plaintiff; and (4) the public interest. Dataphase Systems, Inc. v. CL Systems, Inc., 640 F.2d 109, 113 (8th Cir.1981)(en banc).
2. The likelihood that Solutech Consulting will prevail on the merits of its claim for trademark infringement must be examined in the context of the relative injuries to the parties and the public. Id. at 113.
3. In cases of trademark infringement, irreparable harm is presumed from proof of likelihood of success on the merits. Calvin Klein Cosmetics Corp. v. Lenox Laboratories, Inc., 815 F.2d 500, 505 (8th Cir.1987)(citing Black Hills Jewelry Mfg. Co. v. Gold Rush, Inc., 633 F.2d 746, 753 (8th Cir.1980)). Thus Solutech Consulting need not point to any specific lost sales or business to show irreparable injury. See id.
4. There is a policy of encouraging prompt registration of marks by rewarding those who first seek registration of marks under the Lanham Act. Weiner King, Inc. v. Wiener King Corp., 615 F.2d 512, 523 (Cust. & Pat.App.1980); In re Beatrice Foods Co., 57 C.C.P.A. 1302, 429 F.2d 466, 474 (Cust. & Pat.App.1970). Those rewards include a presumption that the federal registration is valid and that the registrant enjoys a nationwide right of exclusive use in the mark, subject only to those entities that used a similar mark prior to the registrant in a remote geographic area. 15 U.S.C. §§ 1115(a) & 1065.
5. To establish a likelihood of success on the merits, as the registrant, Solutech Consulting need only establish the existence of its federal registration and that a likelihood of confusion exists. Marathon Mfg. Co. v. Enerlite Products Corp., 767 F.2d 214, 217 (5th Cir.1985). Comidas Exquisitos, Inc. v. Carlos McGee's Mexican Café, Inc., 602 F.Supp. 191, 198 (S.D.Iowa 1985) aff'd by Comidas Exquisitos, Inc. v. O'Malley & McGee's, Inc., 775 F.2d 260 (8th Cir.1985); 3 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition, § 27.03 (4th ed.1999)(hereinafter "McCarthy").
6. Generally, to prove a likelihood of confusion, the Court looks to numerous factors, including: (1) the strength of the plaintiff's mark, (2) similarity between the plaintiff's mark and the defendant's mark, (3) the degree to which the products compete with each other, (4) the alleged infringer's intent to pass off its goods as those of the plaintiff, (5) incidents of actual confusion, and (6) whether the degree of purchaser care can eliminate any likelihood of confusion which would otherwise exist. Minnesota Mining & Manufacturing Company v. Rauh Rubber, Inc., *1088 130 F.3d 1305, 1308 (8th Cir.1997). However, when identical marks are used in the same geographic area for the same class of goods or services, likelihood of confusion is presumed. See Opticians Ass'n of Am. v. Independent Opticians of Am., 920 F.2d 187, 195 (3d Cir.1990); Crown Indust. Products Co. v. Crown Central Petroleum Corp., 58 C.C.P.A. 1095, 440 F.2d 446, 448 (Cust. & Pat.App.1971); VMG Enterprises, Inc. v. F. Quesada & Franco, Inc., 788 F.Supp. 648, 661 (D.P.R.1992). Moreover, Plaintiff has admitted a likelihood of confusion exists. (Plaintiff's Memorandum in Opposition to the Motion for Preliminary Injunction at 17).
7. Since the parties are using the identical mark, SOLUTECH, within California, a likelihood of confusion, particularly in California and Oregon is presumed.
8. To prove that irreparable harm will occur, Solutech Consulting need not point to any specific lost sales or business, because, in a trademark infringement case, irreparable injury is presumed from proof of likelihood of success on the merits. Calvin Klein Cosmetics Corp. v. Lenox Laboratories, Inc., 815 F.2d 500, 505 (8th Cir.1987)(citing Black Hills Jewelry Mfg. Co. v. Gold Rush, Inc., 633 F.2d 746, 753 (8th Cir.1980)); GoTo.com, Inc. v. Walt Disney Co., 202 F.3d 1199, 1205 (9th Cir. 2000).
9. Solutech Consulting will suffer injury if Plaintiff is allowed to continue to use the SOLUTECH mark for its training centers located approximately 80 miles from Solutech Consulting's headquarters. Plaintiff has conceded likelihood of confusion and the fact that the parties are offering similar services to the same potential customers located in California and Oregon. Moreover, Plaintiff has only recently begun using the SOLUTECH name in California and Oregon.
10. This Court will grant the preliminary injunction to prevent Plaintiff from developing and expanding its customer base in California and Oregon over the next several months, possibly harming Solutech Consulting's reputation. If the Court waits until final disposition of this case, there is a significant chance that Solutech Consulting will have lost sales and customers and its reputation will be damaged.
11. In balancing the hardships to both parties, the Court concludes that imposition of the preliminary injunction is appropriate as Plaintiff expanded into California knowing that Solutech Consulting's principal place of business is there.
12. Despite knowing about its proximity to Solutech Consulting's headquarters, Plaintiff opened a training center in Sacramento under the name RL SCHILLING. Moreover, Plaintiff changed the name of the Sacramento training center to SOLUTECH in the midst of this lawsuit.
13. Having knowingly expanded into Solutech Consulting's backyard, Plaintiff cannot be heard to complain that it will be injured if the preliminary injunction is entered. See Curtis Indus., Inc. v. Church & Dwight Co., Inc., 560 F.2d 1325, 1333-34 (7th Cir.1977).
14. Solutech Consulting has been using the name SOLUTECH in California for over six years and it is the federal registrant. If the injunction is denied, Solutech Consulting will be significantly harmed by Plaintiff's use of the mark and expansion in California and Oregon.
15. The purpose of trademark laws is to protect consumers from confusion. Allowing both Solutech Consulting and Plaintiff to simultaneously use the mark SOLUTECH in the computer industry in the same geographic area is contrary to the principles and intent of trademark laws.
16. Federal registration of a trademark also creates the rebuttable presumption *1089 that the registrant owns the mark, the registration and mark are valid and that the registrant has the exclusive right to use the mark in commerce. 15 U.S.C. § 1115. As the federal registrant of the mark SOLUTECH, Solutech Consulting enjoys this presumption.
17. To overcome the rebuttable presumption established by Solutech Consulting's federal registration, Plaintiff must prove (1) Solutech Consulting did not adopt the mark in good faith, and (2) that Plaintiff had sufficient market penetration in the Bay Area at the time of Solutech Consulting's date of first use such that Plaintiff's mark was known in California. Minnesota Pet Breeders, Inc. v. Schell & Kampeter, Inc., 41 F.3d 1242, 1245 (8th Cir.1994); ACCU Personnel, Inc. v. AccuStaff, Inc., 846 F.Supp. 1191, 1205-06, n. 15 (D.Del.1994).
18. As a non-registrant, to prove priority in a geographic market, Plaintiff must prove it had market penetration in the Bay Area of California prior to Solutech Consulting. In the Eighth Circuit, factors used to determine market penetration include: (1) the senior user's dollar value of sales at the time the junior user enters the market; (2) the number of customers of the senior user in the area compared to the area's total population; (3) the senior user's relative and potential growth in sales; and (4) the length of time since significant sales were achieved in the area. Sweetarts v. Sunline, Inc., 380 F.2d 923, 929 (8th Cir.1967). Common law trademark rights cannot be established by advertising alone. Wrist-Rocket II, 578 F.2d at 732.
19. Applying the factors to Plaintiff, Plaintiff cannot prove market penetration in the Bay Area.
20. Moreover, cancellation of Solutech Consulting's federal registration is not the appropriate remedy because Solutech Consulting adopted the mark SOLUTECH in good faith in a remote geographic area.
21. Solutech Consulting, as registrant/junior user, is entitled to federal and state registration and use of the mark SOLUTECH in all areas of the United States, except those where Plaintiff can prove it had market penetration prior to the date Solutech Consulting's trademark registration was issuedFebruary 4, 1997. See, e.g., Natural Footwear Ltd. v. Hart, Schaffner & Marx, 760 F.2d 1383 (3d Cir. 1985); V & V Food Products, Inc. v. Cacique Cheese Co., Inc., 683 F.Supp. 662, 666 n. 2 (N.D.Ill.). A senior user of a mark cannot force the cancellation of a junior user's registration merely because of prior use in a remote area.
22. In Wrist-Rocket II, the Eighth Circuit found that where a common law owner of a mark pre-dates use of the mark by the registrant, the senior user is entitled only to those areas where it had market penetration prior to the junior user and prior to the date of the junior user's registration. Wrist-Rocket Mfg. Co., Inc. v. Saunders Archery Co., 578 F.2d 727, 731 (8th Cir.1978).[1] In numerous other cases, cancellation *1090 of a registration did not result from the prior use of the mark in a remote area. See Peaches Entertainment Corp. v. Entertainment Repertoire Assoc., Inc., 62 F.3d 690, 692-93 (5th Cir.1995); Natural Footwear, 760 F.2d at 1394-95; Weiner King v. Wiener King Corp., 615 F.2d 512, 522 (Cust. &Pat.App.1980); Burger King of Florida, Inc. v. Hoots, 403 F.2d 904 (7th Cir.1968); ACCU Personnel, Inc. v. AccuStaff, 846 F.Supp. 1191, 1204-05 (D.Del. 1994); V & V Food, 683 F.Supp. at 666-67; Great Basin Brewing Co. v. Healdsburg Brewing Co., 44 U.S.P.Q.2d 1751 (D.Nev. 1997); Architemps Inc. v. Architemps Ltd., 11 U.S.P.Q.2d 1885, 1887 (S.D.N.Y. 1989). Therefore, Plaintiff is not entitled to cancellation of Solutech Consulting's registration simply because Plaintiff was the first to use the mark in a remote area.
Accordingly,
IT IS HEREBY ORDERED that defendant Solutech Consulting's Motion for a Preliminary Injunction is GRANTED. (Docs.59, 60)
NOTES
[1] Initially, in Wrist-Rocket Mfg. Co. v. Saunders Archery, 516 F.2d 846 (8th Cir.1975), the Eighth found that the registration could not be canceled because it was incontestable pursuant to 15 U.S.C. § 1065 since it had been registered for more than five years. Id. at 851. However, in Wrist-Rocket II, the Eighth Circuit amended its decision in Wrist-Rocket I, stating that, pursuant to 15 U.S.C. § 1065, a mark is always contestable to the extent that "a party has acquired common-law trademark rights continuing since before the publication of the federal registration." Wrist-Rocket II, 578 F.2d at 731; see also Armand's Subway, Inc. v. Doctor's Assoc., Inc., 604 F.2d 849, 850 (4th Cir.1979); Architemps, 11 U.S.P.Q.2d at 1887. Nevertheless, the Eighth Circuit went on to hold that the registrant was entitled to national rights subject only to the senior users' previous market penetration.