# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-1999

_____

Leslie A. Davis, in his capacity as    *
President of Earth Protector Licensing    *
Corporation and Earth Protector, Inc.;    *
Earth Protector Licensing Corporation;    *
Earth Protector, Inc.,    *
   *
       Plaintiffs - Appellants,    *
   *    Appeal from the United States
       v.    *    District Court for the District of
   *    Minnesota.
The Walt Disney Company; Disney    *
Channel; ABC, Inc.,    *
   *
       Defendants - Appellees.    *

_____

Submitted: November 14, 2005
Filed: December 5, 2005

_____

Before WOLLMAN, FAGG, and MELLOY, Circuit Judges.

_____

MELLOY, Circuit Judge.

The plaintiffs appeal the district court's grant of summary judgment for the defendants on a claim of trademark infringement.[1]  We affirm.

_____

[1] The Honorable Donovan W. Frank, United States District Judge for the District of Minnesota.

## I. Background

Leslie Davis is the founder and president of an environmental advocacy organization called Earth Protector, Inc. He owns a registered federal trademark for the term "Earth Protector" on books, pamphlets, and other printed material. Davis attempted to register the same mark for the trademark class encompassing television broadcasts and video services, but he abandoned the application. The appellees, the Walt Disney Company ("Disney") and affiliated parties, created a movie called *Up, Up and Away* ("*Up*") for the Disney Channel in 2000. *Up* featured a fictional company named Earth Protectors. The president of the company tried to use computer software to control the minds of kids in a nefarious plot to take over the world. Fortunately, he was thwarted by a fast-thinking, but otherwise superpower-less, teenager who was in a family of superheroes.

## II. Standard of Review

The district court granted summary judgment for the appellees, finding as a matter of law that no reasonable jury could conclude that the appellees' use of the Earth Protector mark would create a likelihood of confusion.[2] We review that grant of summary judgment de novo and view all facts in the light most favorable to the non-moving party. Brooks v. Tri-Systems, Inc., 425 F.3d 1109, 1110 (8th Cir. 2005). If the district court had made its determination of a likelihood of confusion following a bench trial, we would review it for clear error. Kemp v. Bumble Bee Seafoods, Inc., 398 F.3d 1049, 1053-54 (8th Cir. 2005). Because the determination in this case was made at the summary judgment stage, however, we must conduct an independent analysis.

---

[2] The district court also offered additional bases for its decision. Because we agree with the district court's determination regarding the likelihood of confusion, as discussed in Part III, we need not address these additional bases.

III. Analysis

The Lanham Act prohibits the use of a mark in connection with goods or services in a manner that is likely to cause confusion as to the source or sponsorship of the goods or services. 15 U.S.C. § 1125(a)(1). The lawsuit underlying this appeal is not a typical trademark case because the appellees did not affix the appellants' word mark to goods or use it to promote products or services. Rather, the appellees simply used the appellants' mark in a fictional movie. In this circuit, whether the appellees' use of the mark is protected by the First Amendment is considered separately from the question of whether the appellees' use of the mark creates a likelihood of confusion. Anheuser-Busch, Inc. v. Balducci Publ'ns, 28 F.3d 769, 773 (8th Cir. 1994). Because we affirm the district court's finding of no likelihood of confusion in this case, we need not analyze the First Amendment issue.

A. The SquirtCo Factors

In SquirtCo v. Seven-Up Co., 628 F.2d 1086, 1091 (8th Cir. 1990), we articulated the factors to be considered in evaluating a likelihood of confusion. These can be enumerated as: 1) the strength of the plaintiff's mark; 2) the similarity between the plaintiff's and defendant's marks; 3) the degree to which the allegedly infringing product competes with the plaintiff's goods; 4) the alleged infringer's intent to confuse the public; 5) the degree of care reasonably expected of potential customers, and 6) evidence of actual confusion. "[W]e use [these factors] as a guide to determine whether a reasonable jury could find a likelihood of confusion. Factual disputes regarding a single factor are insufficient to support the reversal of summary judgment unless they tilt the entire balance in favor of such a finding." Duluth News-Tribune v. Mesabi Publ'g Co., 84 F.3d 1093, 1096 (8th Cir. 1996).

1. Strength of the Mark

The mark at issue is "Earth Protector." The appellants used this mark in connection with educational materials, t-shirts, and occasional broadcasts of a local cable-access show called "The Earth Protector Show." Because the mark is used in conjunction with the products and services of an environmental advocacy organization, we find that the mark is "descriptive." See id. (finding the term "Duluth News-Tribune" to be descriptive as the mark for a newspaper because "[t]he words convey meaning too directly to be suggestive, yet are too specific to be generic"). A descriptive mark is "the weakest protectable mark." Cellular Sales, Inc. v. Mackay, 942 F.2d 483, 486 (8th Cir. 1991). As such, we find that the first SquirtCo factor weighs in favor of the appellees.

2. Similarity Between the Marks

This factor weighs in favor of the appellants. The appellees used the term "Earth Protectors," which is almost identical to the appellants' Earth Protector mark.[3]

3. Competitive Proximity of the Goods

We reject the appellants' argument that competitive proximity exists simply because the appellants and appellees both offer educational and informational services. The appellees' only use of the mark in question was in a fictional children's movie that aired only on the Disney Channel. Thus, that movie is the product to which we must apply the SquirtCo factors. See Ocean Bio-Chem, Inc. v. Turner Network Television, Inc., 741 F. Supp. 1546, 1557 (S.D. Fla. 1990) (finding that when the defendant used a term similar to the plaintiff's mark as the name of a company in

---

[3] We do note, however, that while the appellees used an almost identical mark, they used the mark in a very different manner than the appellants. This could reduce the probability of consumer confusion.

its fictional movie, the movie was the product to be compared to the plaintiff's goods). If products are "wholly unrelated" this factor weighs against a finding that confusion is likely. Kemp, 398 F.3d at 1056. If the products are closely related, and it is reasonable for consumers to believe the products come from the same source, confusion is more likely. Id. We find that a movie designed for children's entertainment that airs on a national children's network is not so similar to an infrequently broadcast cable-access environmental advocacy television program that consumers are likely to believe the two products came from the same source. Accordingly, this factor also weighs in favor of the appellees.

4. Intent to Confuse the Public.

This factor weighs in favor of the appellees as there is no evidence in the record that the appellees intended to confuse the public. Although proof of bad intent is not required for success in a trademark infringement or unfair competition claim, the absence of such intent is a factor to be considered. See Caterpillar Inc. v. Walt Disney Co., 287 F. Supp. 2d 913, 919 (C.D. Ill. 2003) (stating that the absence of bad intent on the part of the defendant "troubles the Court").

5. Degree of Care Expected of Consumers

We find that this factor weighs in favor of neither party. In a typical trademark case, we would consider the degree of care that consumers would use in purchasing the product that bears the allegedly infringing mark. In this case, however, there are no "purchasers" because *Up* was not sold as a video or DVD. Although subscribers to the Disney Channel can be considered consumers for the purpose of this analysis, the appellants' mark does not appear in the movie's title, and there is no evidence that the appellees used the mark in conjunction with advertising or promotion for the movie. As such, consumers would not even be aware of the use of the mark until they viewed the film or were told about its content.

## 6. The Evidence of Actual Confusion

We find that this factor weighs in favor of the appellants. However, its importance is reduced due to the characteristics of the evidence put forth to establish actual confusion. The appellants' evidence of actual confusion comes from eleven affidavits, but only two of the affiants saw *Up* as it was broadcast on the Disney Channel. The rest were given a copy of the movie by Davis. Confusion created by the plaintiff is not evidence of actual confusion in the marketplace. See Vitek Sys., Inc. v. Abbot Labs., 675 F.2d 190, 193-94 (8th Cir. 1982) (holding that the "district court was not required to give weight to confusion created by [the plaintiff]"). Additionally, some of the affiants do not express their own confusion, but rather state a concern that others might be confused.[4] However, we must consider these affidavits in the light most favorable to the appellants. As such, we find there is some evidence of actual confusion.

## B. The Appropriateness of Summary Judgment

When "a trademark dispute centers on the proper interpretation to be given to the facts, rather than on the facts themselves, summary disposition is appropriate." Duluth, 84 F.3d at 1099. The appellants argue that, because there is evidence of confusion, we must overturn the grant of summary judgment. This argument fails. See id. (granting summary judgment for the appellees despite finding the plaintiff established an incident of actual confusion). "Though evidence of actual confusion may be the best evidence of likelihood of confusion, it is not conclusive of its

---

[4] Because it is inappropriate to assess the credibility of an affiant at the summary judgment stage, we do not consider the appellees' arguments that the affidavits should be discounted because most of them were authored by supporters of Earth Protector, Inc. and/or Davis's friends and family members. We likewise do not consider the fact that several of the affiants expressed their confusion in verbatim accounts mirroring the language of the Lanham Act.

existence." Woodsmith Publ'g Co. v. Meredith Corp., 904 F.2d 1244, 1249 (8th Cir. 1990) (affirming a grant of summary judgment for the defendant despite the plaintiff establishing a "few instances" of actual confusion).

As courts have repeatedly noted, "the 'core element' of trademark infringement law is 'whether an alleged trademark infringer's use of a mark creates a likelihood that the consuming public will be confused as to who makes what product.'" Brother Records, Inc. v. Jardine, 318 F.3d 900, 908 (9th Cir. 2003) (quoting Thane Int'l, Inc. v. Trek Bicycle Corp, 305 F.3d 894, 901 (9th Cir. 2002)). Because Disney neither affixed the appellants' mark to any physical copies of the movie nor used the mark in promoting the film, it is clear that consumers would not be confused as to the source of the film. Nonetheless, the appellants contend that even if viewers of *Up* were not confused as to who produced the movie, they may still mistakenly have thought Earth Protector, Inc. was affiliated with the movie. The Lanham Act does prohibit the unauthorized use of a mark in commerce if it would cause confusion as to whether there is an "affiliation, connection, or association" with another person. 15 U.S.C. § 1125(a)(1)(A). However, the manner in which the appellees used the mark makes it unlikely that anyone would suspect sponsorship by the appellants. As the appellants note, the Earth Protectors company depicted in *Up* commits "dastardly deeds." One of the appellants' affidavits goes so far as to say that the movie portrays Earth Protectors employees as "terrorists, kidnappers, and robbers." Because the movie's depiction of the company using the mark is resoundingly negative, it is unlikely that viewers will assume that the real Earth Protector, Inc. was a sponsor of the movie or that Earth Protector, Inc. and Disney are otherwise affiliated.[5]

IV. Conclusion

The majority of the SquirtCo factors weigh against a likelihood of confusion in this case. Furthermore, the circumstances surrounding the appellees' use of the

---

[5] While this depiction arguably supports the appellants' previously dismissed trademark dilution and defamation claims, these claims are not part of this appeal.

mark make confusion less likely than in a traditional trademark infringement action. Because we agree that no reasonable jury could find a likelihood of confusion in this case, we affirm the district court's grant of summary judgment for the appellees.

_____