# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 10-1707

_____

| | | |
|---|---|---|
| Community of Christ Copyright Corporation; Community of Christ Church, also known as Reorganized Church of Jesus Christ of Latter Day Saints, | * * * * * | |
| | * | Appeal from the United States |
| | * | District Court for the |
| Appellees, | * | Western District of Missouri. |
| | * | |
| v. | * | |
| | * | |
| Devon Park Restoration Branch of Jesus Christ's Church; David McLean, | * * | |
| | * | |
| Appellants. | * | |

_____

Submitted: January 13, 2011
Filed: March 21, 2011

_____

Before WOLLMAN, HANSEN, and SHEPHERD, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

Devon Park Restoration Branch of Jesus Christ's Church and David McLean (Devon Park) appeal from the judgment entered following the district court's[1] grant of summary judgment in favor of Community of Christ Copyright Corporation and

_____

[1]The Honorable Gary A. Fenner, United States District Judge for the Western District of Missouri.

Community of Christ Church a/k/a Reorganized Church of Jesus Christ of Latter Day Saints (COC). Devon Park contends that the district court erred in concluding that COC's marks were valid and enforceable and that Devon Park's use of the terms created a likelihood of confusion. Devon Park also challenges the orders enjoining it from using the marks and awarding attorneys' fees to COC in the amount of some $348,000. We affirm.

## I. Background

COC is headquartered in Independence, Missouri. COC has registered and owns all rights and interests in the following marks: REORGANIZED CHURCH OF JESUS CHRIST OF LATTER DAY SAINTS (Reg. No. 3,188,759); RLDS (Reg. No. 956,687); PEACE (and design) (Reg. No. 1,044,453); and REORGANIZED CHURCH OF JESUS CHRIST OF LATTER DAY SAINTS PEACE (and design version 1) (Reg. No. 3,173,265). COC also owns all rights and interests in the unregistered mark REORGANIZED CHURCH OF JESUS CHRIST OF LATTER DAY SAINTS PEACE (and design version 2). Collectively, we refer to these marks as the RLDS marks.

In April 2000, COC adopted the name Community of Christ to better reflect its mission. Since then, COC has continued to use its RLDS marks on its buildings, in publications, and in holding real estate. More than fifty authorized congregations have not adopted the Community of Christ name; those congregations use only the RLDS marks. A number of congregations use both the RLDS and Community of Christ designations. Although new congregations do not use the RLDS marks on their signs, all congregations use the Red Hymnal that contains the RLDS marks.[2] Over the years, COC has repeatedly enforced its rights in the RLDS marks.

_____

[2]The Red Hymnal has not been reprinted since 2001. It is intended to be replaced in 2013 with publishing references using the RLDS marks removed.

Devon Park is a non-profit organization that is also located in Independence, Missouri. Devon Park was originally formed as Southeast Independent Branch in 1987 by members of COC. In 2004, it incorporated as Devon Park Restoration Branch of Jesus Christ's Church. Although it did not request or receive permission from COC, Devon Park has used the RLDS marks for years, explaining that it used the marks so that "people would not think they started a new church." Inside its building, Devon Park displays seals and flags that portray the RLDS marks. Beginning in 2005 and up until the issuance of the district court's order, Devon Park displayed an exterior sign that read "Reorganized Church of Jesus Christ of Latter Day Saints: Devon Park Restoration Branch."

In 2007, COC saw a picture of Devon Park's exterior sign. In October 2008, Devon Park sent a letter to COC stating that Devon Park was using and would continue to use the RLDS marks on its signage, literature, church bulletins, and advertisements. The letter itself contained two RLDS marks. In response, COC sent Devon Park a cease and desist letter. Devon Park did not respond and did not cease using the marks. Thereafter, COC filed suit against Devon Park.

COC alleged trademark violations pursuant to 15 U.S.C. §§ 1114 and 1125, state law violations for unfair competition and dilution, and common law infringement. It sought an injunction against Devon Park's use of its RLDS marks. Devon Park counterclaimed seeking to cancel the registrations because COC had abandoned the marks and because the marks had become generic.[3] Both parties moved for summary judgment. The district court granted COC's motion for summary

---

[3]Devon Park also raised the affirmative defenses of estoppel and laches. The district court dismissed these defenses in its order dated March 3, 2009, and Devon Park did not appeal from their dismissal. As did the district court, we refrain from addressing Devon Park's religion-based arguments, for the First Amendment obligates courts to apply a principle of "neutrality toward religion." Bd. of Educ. of Kiryas Joel Village Sch. Dist. v. Grumet, 512 U.S. 687, 709 (1994).

judgment, dismissed Devon Park's counterclaims, and permanently enjoined Devon Park from utilizing the RLDS marks. Additionally, the district court concluded that the case was exceptional and ordered Devon Park to pay the attorneys' fees described above.

## II. Discussion

We review *de novo* the district court's grant of summary judgment and view all facts in the light most favorable to the non-moving party. Davis v. Walt Disney Co., 430 F.3d 901, 902-03 (8th Cir. 2005). Summary judgment is appropriate "when a trademark dispute centers on the proper interpretation to be given the facts, rather than on the facts themselves." Id. at 905 (citation and quotations omitted).

### A. Likelihood of Confusion

Devon Park contends that the district court erred in granting summary judgment in favor of COC on its trademark infringement and false designation of origin claims. Both claims require a trademark owner to prove that it has ownership or rights in the trademark and that the defendant has used the mark in connection with goods or services in a manner likely to cause consumer confusion as to the source or sponsorship of the goods or services. See id. at 903 (citing § 1125(a)(1)); see also Minn. Mining & Mfg. Co. v. Rauh Rubber, Inc., 130 F.3d 1305, 1308 (8th Cir. 1997). Devon Park does not dispute that COC owns the RLDS marks, but asserts that COC failed to prove a likelihood of confusion between the RLDS marks and its use of the marks.

To determine the likelihood of confusion between the trademarks and the allegedly infringing marks, we consider the following factors set forth in SquirtCo. v. Seven-Up Co.: 1) the strength of the trademark owner's mark; 2) the similarity between the trademark owner's mark and the alleged infringing mark; 3) the degree

-4-

to which the allegedly infringing services competes with the trademark owner's services; 4) the alleged infringer's intent to confuse the public; 5) the degree of care reasonably expected of potential customers; and 6) evidence of actual confusion. 628 F.2d 1086, 1091 (8th Cir. 1980); see, e.g., Georgia-Pacific Consumer Prods. LP v. Myers Supply, Inc., 621 F.3d 771, 775 (8th Cir. 2010) (citing Davis, 430 F.3d at 903). "Under SquirtCo, no one factor controls, and because the inquiry is inherently case-specific, different factors may be entitled to more weight in different cases." Kemp v. Bumble Bee Seafoods, Inc., 398 F.3d 1049, 1053 (8th Cir. 2005) (citing SquirtCo., 628 F.2d at 1091).

Devon Park presents numerous arguments as to why these factors do not support a finding of a likelihood of confusion, but it has failed to create a genuine issue of fact. Devon Park admits that the RLDS marks are meaningful and distinct and concedes that the marks are similar to the RLDS marks, the only difference being the inclusion of the word "branch." Devon Park did not present any evidence that the marks were not identical or, at the very least, substantially similar. Instead, it asserts that COC does not use the marks to offer religious services. As discussed below, this argument fails because the record establishes COC's continued use of the RLDS marks to offer religious services.

Devon Park contends that its services do not compete with COC's services because it offers a category of services different from those offered by COC. Devon Park's attempts to distinguish the services based on the substance of the religious messages offered is unconvincing, particularly in light of the fact that Devon Park chose the RLDS name so that people would not think that it had started a new church. Devon Park contends that consumers will use considerable care in distinguishing between the services offered by Devon Park compared with those offered by COC. A consumer exercising considerable care may still be confused, however, because Devon Park utilizes identical or substantially similar marks while offering the same category of services in the same geographical location. See, e.g., Pfizer Inc. v. Sachs,

652 F. Supp. 2d 512, 522-23 (S.D.N.Y. 2009); <u>Solutech, Inc. v. Solutech Consulting Servs., Inc.</u>, 153 F. Supp. 2d 1082, 1088 (E.D. Mo. 2000) ("[W]hen identical marks are used in the same geographic area for the same class of goods or services, likelihood of confusion is presumed."). We conclude that even when viewed in the light most favorable to Devon Park, the evidence established that its use of the RLDS marks created a likelihood of confusion and that COC was entitled to summary judgment on its trademark infringement and false designation of origin claims.

COC was also entitled to summary judgment on its state law claims for common law infringement, unfair competition, and trademark dilution. Missouri law "is well settled that the same facts which support a suit for trademark infringement support a suit for unfair competition" and common law infringement. <u>Gilbert/Robinson, Inc. v. Carrie Beverage-Missouri, Inc.</u>, 758 F. Supp. 512, 527 (E.D. Mo. 1991); <u>Steak n Shake Co. v. Burger King Corp.</u>, 323 F. Supp. 2d 983, 991 (E.D. Mo. 2004) (citation omitted). Thus, our conclusion that Devon Park infringed COC's RLDS marks supports the district court's conclusion that Devon Park also engaged in unfair competition in violation of Missouri law and common law infringement. To prove dilution of the distinctive quality of its mark, a trademark holder must show that its mark is valid and distinctive and that the alleged infringer's use of its mark created a likelihood of dilution of the distinctive quality of the mark. <u>Gilbert/Robinson, Inc.</u>, 758 F. Supp. at 527 (citing <u>Hallmark Cards, Inc. v. Hallmark Dodge, Inc.</u>, 634 F. Supp. 990, 1000 (W.D. Mo. 1986)); <u>see also</u> Mo. Rev. Stat. § 417.061 (anti-dilution statute). As addressed below, the marks are valid and enforceable, Devon Park has conceded that the marks are distinctive, and because there is a likelihood of confusion, COC has shown that Devon Park's use of the marks creates a likelihood of dilution.

B.  Cancellation of Registered Marks

Devon Park asserts that the district court should have cancelled the RLDS marks' registration because COC abandoned them and because they are generic. 15 U.S.C. § 1064(3).  A registered mark is deemed abandoned "when its use has been discontinued with intent not to resume such use" or when an owner causes the mark to "lose its significance as a mark."  § 1127.  Devon Park has the burden of proving abandonment by clear and convincing evidence.  See 3 J. McCarthy, McCarthy on Trademarks and Unfair Competition § 17:12 (4th ed. 2008).

Devon Park contends that COC has abandoned the marks because it no longer uses them.  As stated above, however, the record contains multiple examples of COC's continued use of the RLDS marks on its buildings, podiums, newsletters, seals, and hymnals in connection with offering religious services.

Devon Park asserts that COC's limited use constitutes a token use, allowing it to warehouse the mark.  In support of its argument, Devon Park relies on Intrawest Financial Corp. v. Western National Bank of Denver, 610 F. Supp. 950 (D. Colo. 1985).  Intrawest is distinguishable, however, for there the mark was used only in the company's safe deposit department.  Id. at 953-54.  Moreover, the mark holder did not claim that the registered mark should continue to be associated with the mark owner, conceding that the mark "has ceased to be a franchise which we alone can claim."  Id. at 952.  COC, on the other hand, continues to use the RLDS marks in bona fide ways, has asserted that it will continue to associate the RLDS marks with its church, and has enforced its rights in the marks.  Although the record reflects that COC intends to move away from being identified by its RLDS marks, it does not

support Devon Park's claim that the RLDS marks have been abandoned through non-use, *i.e.*, that the mark's use was discontinued, not merely reduced.[4]

Devon Park's second theory of abandonment—that COC caused the RLDS marks to lose significance—also fails. Devon Park's only support for this theory is that COC expended significant resources in adopting the name Community of Christ. COC's creation and use of the additional mark, however, is insufficient to cause its marks to lose their significance. See Guiding Eyes for the Blind, Inc. v. Guide Dog Found. for the Blind, Inc., 384 F.2d 1016, 1018-19 (C.C.P.A. 1967). Accordingly, we conclude that the district court correctly dismissed Devon Park's counterclaim for cancellation based on abandonment.

Devon Park next argues that the RLDS registered marks have become generic because they identify religion, not COC as an institution. Devon Park has the burden of proving by a preponderance of the evidence that the registered marks are generic and that their registrations should thus be cancelled. See, e.g., Retail Servs., Inc. v. Freebies Publ'g, 364 F.3d 535, 542 (4th Cir. 2004) ("The presumption of validity flowing from trademark registration, therefore, has a burden-shifting effect, requiring the party challenging a registered mark to produce sufficient evidence to establish that the mark is generic by a preponderance of evidence."). To determine whether a registered mark has become the generic name of services, we consider "[t]he primary significance of the registered mark to the relevant public rather than purchaser motivation." 15 U.S.C. § 1064(3). Devon Park presented evidence only that the

---

[4]Although COC has adopted a new name and stated that it is retaining the RLDS marks "for legal purposes" or that the marks remain "legally binding." It continues to use the marks. COC has explained that "it will continue to use its Reorganized Church of Jesus Christ of Latter Day Saints name and [it] may not abandon [the name] without authorization from a world conference." The record indicates that although COC may discontinue its use of the marks, it has not yet done so and thus the marks remain entitled to trademark protection.

registered REORGANIZED CHURCH OF JESUS CHRIST OF LATTER DAY SAINTS and RLDS marks had become generic, not that the other RLDS marks had become so.

COC asserts that a mark becomes generic when the trademark has become the exclusive descriptor of the services. See, e.g., Ty Inc. v. Softbelly's Inc., 353 F.3d 528, 531-32 (7th Cir. 2003) ("Imagine the pickle that sellers would be in if they were forbidden to use 'brassiere,' 'cellophane,' 'escalator,' 'thermos,' 'yo-yo,' or 'dry ice' to denote products—all being former trademarks that have become generic terms."). Devon Park admitted that it could accurately describe its services without using COC's RLDS marks. Similar to other dissident churches, Devon Park stated that it could use the term "Restoration" or the phrase "We follow the original doctrines of Joseph Smith III," instead of the RLDS marks. Thus Devon Park has acknowledged that the RLDS marks have not become the exclusive descriptor of the services.

Devon Park failed to present evidence of what the primary significance of the marks was to the relevant public. Devon Park submitted advertisements by other organizations containing statements such as "Association of fundamental R.L.D.S.," "Not officially affiliated with the RLDS Church," and "Services for fundamental R.L.D.S." COC contends that these advertisements show that other groups use RLDS to refer to COC or its members. Devon Park also submitted affidavits from two dissident church leaders. One leader stated that he does not associate the marks with the religious services offered by COC and that COC is "not the source of or a place where traditional doctrines of the RLDS religion are offered." This evidence, however, does not show what the relevant public understands the marks to mean. See Anheuser-Busch, Inc. v. Stroh Brewery Co., 750 F.2d 631, 638 (8th Cir. 1984) ("The test, however, is what consumers, not persons in the trade, understand the term to be." (citations omitted)).

Devon Park relies on case law to suggest that the RLDS marks are generic and represent a religious denomination independent of COC. See Christian Sci. Bd. of Dirs. v. Evans, 520 A.2d 1347, 1350-52 (N.J. 1987) (holding that "Christian Science" term was generic and that disaffiliated group could use it in their church's name). In Evans, both parties agreed that the term "Christian Science" identified the name of a religion that had been founded before the mark holder, Church of Christ, Scientist, existed. Id. at 1351. Unlike Evans where both parties agreed that the term was the name of their religion, there is no evidence that the RLDS marks identify a religion. Id. at 1349 ("Christian Science is a religion founded by Mary Baker in 1866."). Devon Park thus failed to meet its burden of presenting evidence that the primary significance of the marks was religion and not that of identifying the institutional source, COC. Moreover, contrary to Devon Park's assertion that religious denomination names are generic terms, other courts have found them descriptive and not generic. See TE-TA-MA Truth Found. v. World Church of the Creator, 297 F.3d 662, 666 (7th Cir. 2002) (listing individual denomination names that it believed to be descriptive and not generic including "Church of Jesus Christ of Latter Day Saints" and "Church of Christ, Scientist"). As stated above, Devon Park failed to present any evidence that the primary significance to the relevant public of the REORGANIZED CHURCH OF JESUS CHRIST OF LATTER DAY SAINTS and RLDS marks was religion and not COC. Indeed, far from being consistent with its attempts to have the marks deemed generic, Devon Park admits that the marks are distinctive and meaningful. Accordingly, we conclude that the district court correctly dismissed Devon Park's counterclaim for cancellation.

C. Permanent Injunction

Devon Park contends that the district court erred in permanently enjoining it from using the RLDS marks. To obtain a permanent injunction, COC was required to show: (1) its actual success on the merits; (2) that it faces irreparable harm; (3) that the harm to it outweighs any possible harm to others; and (4) that an injunction serves

the public interest. Bank One, Utah v. Guttau, 190 F.3d 844, 847 (8th Cir. 1999). "We review for abuse of discretion a district court's issuance of a permanent injunction." Kennedy Bldg. Assocs. v. CBS Corp., 476 F.3d 530, 534-35 (8th Cir. 2007) (citation omitted). As discussed above, COC succeeded on the merits of its federal and state law claims. Moreover, COC faces irreparable harm from Devon Park's use of the RLDS marks because in trademark law, injury is presumed once a likelihood of confusion has been established. See Mut. of Omaha Ins. Co. v. Novak, 836 F.2d 397, 403 n.11 (8th Cir. 1987) (citation omitted); 15 U.S.C. § 1116(a) (authorizing injunctions for violations of § 1125). The district court did not clearly err in finding that Devon Park will not be harmed from using alternative language instead of COC's RLDS marks and that the public has an interest in the enforcement of valid trademarks. We conclude that the district court did not abuse its discretion in permanently enjoining Devon Park's use of the RLDS marks.

D. Attorneys' Fees Award

The Lanham Act authorizes that a court "in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a); see also Nightingale Home Healthcare, Inc. v. Anodyne Therapy, LLC, 626 F.3d 958, 960-63 (7th Cir. 2010) (summarizing the different circuit tests for determining when a case is exceptional). We have held that an exceptional case is one in which the plaintiff's action was groundless, unreasonable, vexatious, or pursued in bad faith. Aromatique, Inc. v. Gold Seal, Inc., 28 F.3d 863, 877 (8th Cir. 1994) (citing Hartman v. Hallmark Cards, Inc., 833 F.2d 117, 123 (8th Cir. 1987)). Moreover, we have held that when a defendant's unlawful conduct "was willful and deliberate, the court may well determine that this is the type of 'exceptional' case for which an award of attorney's fees is appropriate." Metric & Multistandard Components Corp. v. Metric's Inc., 635 F.2d 710, 716 (8th Cir. 1980) (citations omitted). We review the district court's decision on whether to award attorneys' fees under an abuse-of-discretion standard. Scott Fetzer Co. v. Williamson, 101 F.3d 549, 555 (8th Cir. 1996).

Devon Park challenges the district court's finding that this was an exceptional case, arguing that a finding of bad faith is a prerequisite to such a determination. Such a contention is contrary to our holdings. See, e.g., Hartman, 833 F.2d at 123 ("Bad faith is not a prerequisite to a Lanham Act fee award." (citations omitted)). Moreover, Devon Park's reliance on Sovereign Order of Saint John of Jerusalem, Inc. v. Grady, 119 F.3d 1236, 1244 (6th Cir. 1997), and International Olympic Committee v. San Francisco Arts & Athletics, 781 F.2d 733, 738 (9th Cir. 1986), for the same proposition that a defendant must have acted in bad faith to support a finding that a case is extraordinary is incorrect. See, e.g., Eagles, Ltd. v. Am. Eagle Found., 356 F.3d 724, 728 (6th Cir. 2004) ("Here, the district court correctly recognized that the term 'exceptional' is not defined in the statute, although a case is not exceptional unless 'the infringement was malicious, fraudulent, willful, or deliberate.'" (citation omitted)); Stephen W. Boney, Inc. v. Boney Servs. Inc., 127 F.3d 821, 827 (9th Cir. 1997) ("While a finding that the losing party has acted in bad faith may provide evidence that the case is exceptional, other exceptional circumstances may warrant a fee award." (internal citation omitted)). Thus, Devon Park is mistaken in its assertion that the district court was required to find the existence of bad faith before it could deem the case exceptional.

Devon Park willfully and deliberately used the RLDS marks. Devon Park knew that COC owned the RLDS marks and that COC continued to use the marks. Devon Park sent a letter explaining why COC's prior enforcement of the RLDS rights against another church would not cause it to cease its use of the marks. See Cmty. of Christ Copyright Corp. v. Miller, No. 07-0543-CV-W-GAF, 2007 WL 4333192 (W.D. Mo. Dec. 7, 2007) (preliminarily enjoining South Restoration Branch church from using the REORGANIZED CHURCH OF JESUS CHRIST OF LATTER DAY SAINTS and RLDS marks). Following its receipt of COC's cease and desist letter, Devon Park continued to use the marks and made no response to the letter. Accordingly, we conclude that the district court did not abuse its discretion in

determining that Devon Park had willfully and deliberately used the RLDS marks and that it was justified in finding the case to be exceptional.

Devon Park asserts that the district court abused its discretion in awarding attorneys' fees, arguing that because it is a non-profit organization and is being served by a volunteer pastor, any fee award imposes a "staggering financial burden" and is "financially devastating" to it. Alternatively, Devon Park requests that if any fees are allowed, the amount that the district court awarded should be reduced. Although the fee award strikes us as being generous, and while it may be questioned why COC's counsel found it necessary to spend the amount of time it claimed in preparing and presenting its case, Devon Park has not specifically challenged the time spent, the rates charged, or the scope of the work performed. Accordingly, we cannot say that the district court abused its discretion in determining the amount of the award.

## III. Conclusion

The judgment is affirmed.

_____