# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

Nos. 11-1568/1683

_____

| | | |
|---|---|---|
| The First National Bank in Sioux Falls, | * | |
| | * | |
| | * | |
| Appellee/Cross-Appellant, | * | |
| | * | |
| | * | |
| v. | * | Appeals from the United States |
| | * | District Court for the |
| First National Bank South Dakota; | * | District of South Dakota. |
| SPC, Inc., doing business as First | * | |
| National Merchant Solutions; First | * | |
| National Bank of Omaha; First | * | |
| National of Nebraska, Inc., | * | |
| | * | |
| Appellants/Cross-Appellees. | * | |
| | * | |

_____

Submitted:  February 16, 2012
Filed:  May 25, 2012

_____

Before GRUENDER, BENTON, and SHEPHERD, Circuit Judges.

_____

GRUENDER, Circuit Judge.

First National Bank South Dakota ("FNB South Dakota") and its affiliates appeal from the district court's[1] entry of a permanent injunction against them as a remedy for trademark infringement and unfair competition claims brought by The First National Bank in Sioux Falls ("FNB Sioux Falls"). FNB Sioux Falls cross-appeals the denial of its motion for attorney's fees and the district court's purported factual finding that certain of FNB South Dakota's affiliates' names "appear" not to infringe FNB Sioux Falls' marks. For the reasons discussed below, we affirm in all respects.

## I.     Background

FNB Sioux Falls offers retail banking in the local Sioux Falls, South Dakota area. FNB South Dakota offers commercial and retail banking throughout portions of South Dakota, with its principal offices in Yankton, South Dakota, eighty miles from Sioux Falls. FNB Sioux Falls has a history of litigation with FNB South Dakota and its affiliates.[2]

In 1994, FNB South Dakota adopted its current legal name (it was formerly "Valley State Bank") and began print and newspaper advertising in the Yankton area as "First National Bank." FNB South Dakota also acquired an option to buy land in Sioux Falls about one mile from FNB Sioux Falls' principal office and made plans to open a branch there. In 1995, FNB South Dakota began newspaper advertising in the Sioux Falls area highlighting the term "First National Bank." In response, FNB Sioux

---

[1]The Honorable Lawrence L. Piersol, United States District Judge for the District of South Dakota.

[2]Defendant First National of Nebraska, Inc. is the parent company of FNB South Dakota and of defendant First National Bank of Omaha, which operates in Nebraska. Defendant SPC, Inc. is a former affiliate which offered a debit and credit card processing service to merchants under the name "First National Merchant Solutions."

Falls filed claims for unfair use of its common-law service marks "First National," "First National Bank," and "First National Bank in Sioux Falls" against FNB South Dakota. In 1997, the district court permanently enjoined FNB South Dakota from using those marks, or any name "confusingly similar" to them, within a ten-mile radius of Sioux Falls. At that time, the district court declined to extend the injunction to prevent FNB South Dakota from using its full legal name, "First National Bank South Dakota," in the Sioux Falls area. FNB Sioux Falls appealed the decision not to extend the injunction to FNB South Dakota's legal name, and we affirmed. *See First Nat'l Bank in Sioux Falls v. First Nat'l Bank, S.D.*, 153 F.3d 885 (8th Cir. 1998). FNB South Dakota never opened a branch at the Sioux Falls location one mile away from FNB Sioux Falls' principal office.

In 2005, FNB South Dakota applied with the state to open a branch office at a different location in Sioux Falls, just two blocks from the main office of FNB Sioux Falls. In addition, FNB South Dakota adopted new, broader channels of marketing, including various direct mailing campaigns on behalf of its retail and merchant services. The new marketing materials used new logo designs that visually highlighted the terms "First National" and "First National Bank" and minimized the "South Dakota" portion of its name. FNB South Dakota's website presented similar usages of the terms "First National" and "First National Bank."

In response, FNB Sioux Falls brought the instant suit for trademark infringement and related claims against FNB South Dakota in 2006. (FNB Sioux Falls federally registered its marks after the first lawsuit, so the current lawsuit involves Lanham Act claims in addition to the common-law claims in the first lawsuit.) After a bench trial, the district court first issued a judgment extending the 1997 injunction to an eighteen-mile radius within which FNB South Dakota was required to use its full legal name, with no separate visual emphasis on the "First National" or "First National Bank" portion of its name, and also requiring that FNB South Dakota's advertising within that radius over the following year include a

disclaimer that it was in no way affiliated with FNB Sioux Falls. After a motion for reconsideration, however, the district court modified the injunction to preclude FNB South Dakota from using even its full legal name under any circumstances within the eighteen-mile radius. The district court noted that the use of FNB South Dakota's affiliates' names, "First National Bank of Omaha" and "First National of Nebraska," was not enjoined.

FNB South Dakota appeals the injunction prohibiting the use of its full legal name, arguing that res judicata bars this second lawsuit between the same parties, that a "confusion log" compiled by FNB Sioux Falls' employees should not have been admitted into evidence, and that the evidence was insufficient to support a finding of a likelihood of confusion. FNB Sioux Falls cross-appeals the district court's denial of its claim for attorney's fees and its statement that FNB South Dakota's affiliates' names "appear" not to infringe.

## II.     Discussion

### A.     *Res judicata*

FNB South Dakota contends that FNB Sioux Falls' 1995 suit against it, premised on infringement of the same marks, should have precluded this second suit. "The application of res judicata is a legal conclusion that we review *de novo*." *Nolles v. State Comm. for Reorganization of Sch. Dists.*, 524 F.3d 892, 901 (8th Cir. 2008). "Res judicata bars relitigation of a claim if: (1) the prior judgment was rendered by a court of competent jurisdiction; (2) the prior judgment was a final judgment on the merits; and (3) the same cause of action and the same parties or their privies were involved in both cases." *Lane v. Peterson*, 899 F.2d 737, 742 (8th Cir. 1990).

The only element in dispute here is whether this lawsuit involves the same "cause of action." To determine whether two causes of action are the same, the court

examines whether the second lawsuit is "part of the transaction, or series of connected transactions, out of which the [first] action arose . . . , giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, [and] whether they form a convenient trial unit." *Id.* (quoting Restatement (Second) of Judgments § 24 (1980)). "Generally, under this approach a claim is barred by res judicata if it arises out of the same nucleus of operative facts as the prior claim." *Id.* As the district court noted, a leading treatise has observed that "[i]n trademark cases, res judicata must be carefully applied, since the facts of trademark usage and consumer recognition may have changed since the prior judgment was rendered." 6 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 32:88 (4th ed. 2012).

Here, the district court found that the nucleus of operative facts has changed, stating that "the manner in which the trademarks are allegedly infringed" and the "evidence of confusion and the likelihood of confusion" both changed "substantially." In particular, the district court found that consumer confusion could be enhanced by FNB South Dakota's opening of a branch office just two blocks away from FNB Sioux Falls' principal office, instead of a mile away as planned at the time of the first suit. Indeed, FNB Sioux Falls presented evidence that some consumers believed the site two blocks away was simply a new drive-through window for FNB Sioux Falls' principal office, rather than a branch of a competing bank. "Collateral estoppel is no defense when the controlling facts have changed in between the first and second suits." *Tyler v. Harper*, 744 F.2d 653, 657 (8th Cir. 1984).

Because the "nucleus of operative facts" in this action includes facts not common to the prior action, this action is not barred by res judicata.

## B. *Admissibility of the confusion log*

In late 2005, in anticipation of this litigation, FNB Sioux Falls established a confusion log on its company intranet site and instructed all its employees (via three company-wide emails) to record all outside interactions that might suggest confusion with FNB South Dakota. The log, as introduced at trial, included 1,527 entries purporting to document such confusion on the part of customers, vendors, and delivery services. FNB South Dakota objected to the introduction of the log as double hearsay, while FNB Sioux Falls contended that the log satisfied the "then-existing state of mind" hearsay exception. *See* Fed. R. Evid. 803(3).[3] After acknowledging case law on both sides of the issue, the district court ruled that at least some of the evidence in the log satisfied the state-of-mind exception and stated that it would admit the log with the understanding that it would consider the "concerns" expressed by FNB South Dakota when weighing the evidence.

We agree with FNB South Dakota that the log itself is inadmissible double hearsay. While many of the first-level statements of confusion by third parties likely satisfy the state-of-mind hearsay exception, the second-level statements by the employees who logged the incidents do not. The employees were not declaring their own state of mind in the log, but rather attempting to document the third parties' state of mind. *See* Rule 803(3) (applying to "the *declarant's* then-existing state of mind" (emphasis added)). While FNB Sioux Falls argues in the alternative that the employee statements satisfy the present-sense-impression exception, this argument also fails because the entries often were logged long after the incidents occurred, rather than

---

[3]The district court ruled that the log did not qualify as a record kept in the ordinary course of business because it was prepared in anticipation of litigation. *See Chadwell v. Koch Ref. Co.*, 251 F.3d 727, 732 (8th Cir. 2001) ("[R]ecords kept in anticipation of a lawsuit . . . do not qualify for the Rule 803(6) [business records] hearsay exception."). On appeal, FNB Sioux Falls does not dispute that ruling.

"immediately after." *See* Rule 803(1). As a result, the district court erred in admitting the confusion log, standing alone, into evidence.

Nevertheless, "[w]here the district court errs in admitting evidence, we will only grant a new trial or set aside a verdict" where "the error prejudicially influences the outcome." *Lovett ex rel. Lovett v. Union Pac. R.R. Co.*, 201 F.3d 1074, 1080 (8th Cir. 2000). Here, the error was harmless because many of the FNB Sioux Falls employees who made the log entries also offered trial testimony about the incidents of confusion they witnessed. Courts agree that live testimony from an employee regarding specific instances of confused consumer behavior, witnessed first-hand by the testifying employee, is not hearsay. *See Bebe Stores, Inc. v. May Dep't Stores Int'l, Inc.*, 230 F. Supp. 2d 980, 988 n.2 (E.D. Mo.) ("[The defendant] insists that [the testimony of plaintiffs' employees] is inadmissible hearsay, but it is not being introduced to prove the truth of the matter asserted by the customer."), *aff'd*, 313 F.3d 1056 (8th Cir. 2002) (per curiam); *see also Citizens Fin. Grp., Inc. v. Citizens Nat'l Bank of Evans City*, 383 F.3d 110, 133 (3d Cir. 2004) ("[T]he plaintiffs' own testimony about the actual behavior of their customers is not hearsay." (quoting *Callahan v. A.E.V., Inc.*, 182 F.3d 237, 253 (3d Cir. 1999))). FNB South Dakota also had the opportunity to, and did, cross-examine the testifying employees about incidents they had reported in the log.[4] As discussed in the next section, the testimony of FNB Sioux Falls' employees in combination with other admissible evidence was more than sufficient to support the district court's finding of a likelihood of confusion.

Accordingly, the admission of the confusion log was harmless error.

---

[4]We also note that, to the extent FNB Sioux Falls used the log while each employee testified as a writing to refresh the witness's memory, such use was permissible. *See* Fed. R. Evid. 612.

*C. Sufficiency of the evidence of a likelihood of confusion*

FNB South Dakota argues that there was insufficient evidence to support the district court's finding of a likelihood of confusion between its full legal name and FNB Sioux Falls' marks. The likelihood of confusion is a factual question that we review for clear error. *Georgia-Pac. Consumer Prods. LP v. Myers Supply, Inc.*, 621 F.3d 771, 775 (8th Cir. 2010). "If there are two permissible views of the evidence, 'the fact-finder's choice between them cannot be clearly erroneous.'" *Id.* (quoting *Anderson v. City of Bessemer City*, 470 U.S. 564, 574 (1985)).

As an initial matter, FNB South Dakota contends that the district court's initial decision not to enjoin the use of its full legal name indicates that the district court never made a factual finding that the full legal name created actual confusion with FNB Sioux Falls' marks. We note that a trademark plaintiff need not show actual confusion in order to prevail. *See Heartland Bank v. Heartland Home Fin., Inc.*, 335 F.3d 810, 821 (8th Cir. 2003) ("[T]here are at least three evidentiary routes to prove a likelihood of confusion—survey evidence, evidence of actual confusion, and/or argument based on an inference arising from a judicial comparison of the conflicting marks themselves and the context of their use in the marketplace."). Indeed, actual confusion is just one of six factors to consider. *Id.* In any event, after reexamining a record replete with instances of FNB South Dakota's use of its full legal name, the district court stated in its Amended Findings of Fact and Conclusions of Law (Mar. 4, 2011) that it "found significant confusion, including actual confusion." It then found that a key element of its initial choice of remedy, the mandatory use of a disclaimer, would be insufficient to alleviate the confusion. Finally, the district court cited extensive case law on the ineffectiveness of geographical terms in distinguishing otherwise identical marks. The district court concluded that "Defendants['] addition of 'South Dakota' is insufficient to differentiate the banks in this case within FNB Sioux Falls' geographic territory." This plainly constitutes a finding of a likelihood

of confusion between FNB South Dakota's full legal name and FNB Sioux Falls' marks within the eighteen-mile radius.

Next, FNB South Dakota contends that much of the employee testimony presented by FNB Sioux Falls demonstrated not confused potential customers, but rather confused vendors, delivery people, or other non-customers, and occasionally careless (rather than confused) customers. However, the likelihood of confusion made actionable by the Lanham Act "include[s] confusion of nonpurchasers as well as direct purchasers." *Insty\*Bit, Inc. v. Poly-Tech Indus., Inc.*, 95 F.3d 663, 672 (8th Cir. 1996). Moreover, even if one were to eliminate testimony regarding vendors and delivery people, some testimony about relevant customer confusion remains, including testimony from at least one customer. This type of evidence can be sufficient by itself to establish a likelihood of confusion. *See Bebe Stores*, 313 F.3d at 1057 ("Although Bebe did not introduce survey evidence, the live testimony of Bebe's employees and of a confused Bebe shopper were compelling enough to demonstrate the likelihood of actual confusion.").

FNB South Dakota also attempts to minimize the value of testimony from FNB Sioux Falls' employees by relying on a case in which testimony from the plaintiffs' employees about customer confusion was found to be of questionable credibility. *See Vitek Sys., Inc. v. Abbott Labs.*, 675 F.2d 190, 193 (8th Cir. 1982) (finding no clear error in the district court's finding that testimony from the plaintiffs' employees and consultants "to the effect that customers had told them they were confused by the marks" was "ambiguous at best and not credibly probative of the asserted confusion"). In the instant case, in contrast, the district court made a favorable credibility determination as to the employee testimony, and we must give "due regard to the trial court's opportunity to judge the witnesses' credibility." Fed. R. Civ. P. 52(a)(6).

Finally, FNB South Dakota argues that the district court erred in crediting an expert survey (referred to as the "Mantis survey") purporting to show that nineteen

percent of consumers of retail banking services would be confused as to the source of FNB South Dakota's marketing materials. FNB South Dakota first challenges the control mark used by the Mantis survey to filter out confusion caused by carelessness. *See* 6 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 32:187 (4th ed. 2012) ("In any survey, there will always be some interviewees who are bored, hurried or just plain contrary and whose responses must be filtered out through control questions."). FNB South Dakota asserts that the control mark "First Bank & Trust" used in the Mantis survey was improper because it does not include the phrase "First National." To the contrary, "[t]o fulfill its function, a control should 'share[ ] as many characteristics with the experimental stimulus as possible, *with the key exception of the characteristic whose influence is being assessed.*'" *THOIP v. Walt Disney Co.*, 690 F. Supp. 2d 218, 240 (S.D.N.Y. 2010) (emphasis added) (second alteration in original) (quoting Shari Seidman Diamond, *Reference Guide on Survey Research*, *in Reference Manual On Scientific Evidence* 258 (Fed. Judicial Ctr. 2d ed. 2000)). Here, one "characteristic whose influence is being assessed" is the phrase "First National," so the use of that same phrase in the control mark would mask not just careless responses, but also legitimate confusion. We agree with the district court that the control used by the Mantis survey was proper.

FNB South Dakota also argues that the Mantis survey should have focused more on the *commercial* banking market (FNB South Dakota's primary business), as opposed to the *retail* banking market (FNB Sioux Falls' primary business). However, the district court credited evidence that FNB South Dakota also was marketing to the type of retail banking consumers addressed in the survey. In that retail market, FNB South Dakota's own expert found that the percentage of consumers likely to be confused was thirteen percent, and we have held that even eleven percent confusion is "not an insignificant percentage." *Humble Oil & Refining Co. v. Am. Oil Co.*, 405 F.2d 803, 817 (8th Cir. 1969). As a result, the district court did not clearly err in finding that the survey evidence demonstrates a likelihood of confusion.

In summary, the district court's finding of a likelihood of confusion is based on a permissible view of the evidence and, therefore, is not clearly erroneous. *See Georgia-Pac. Consumer Prods.*, 621 F.3d at 775.

### D.     *Attorney's fees*

FNB Sioux Falls cross-appeals the district court's denial of its motion for more than one million dollars in attorney's fees. The Lanham Act authorizes that a court "in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a). Where "a defendant's unlawful conduct 'was willful and deliberate, the court may well determine that this is the type of "exceptional" case for which an award of attorney's fees is appropriate.'" *Cmty. of Christ Copyright Corp. v. Devon Park Restoration Branch of Jesus Christ's Church*, 634 F.3d 1005, 1013 (8th Cir. 2011) (quoting *Metric & Multistandard Components Corp. v. Metric's Inc.*, 635 F.2d 710, 716 (8th Cir. 1980)). The district court's decision whether to award attorney's fees is reviewed for abuse of discretion. *Id.* Because the statute states that the court "may" award attorney's fees in exceptional cases, the district court retains discretion as to the award of attorney's fees even if it finds a case to be exceptional. *See, e.g.*, *Minn. Pet-Breeders, Inc. v. Schell & Kampeter, Inc.*, 843 F. Supp. 506, 519 (D. Minn. 1993).

The district court found that this case had two aspects: (1) FNB South Dakota's violation of the 1997 injunction, and (2) a new likelihood of confusion arising from changed circumstances since 1997. The district court found that while the first aspect of the case could be considered exceptional, the second aspect was "the more significant aspect of the present litigation" and was not in any way exceptional. Accordingly, the district court exercised its discretion to award no attorney's fees.

On appeal, FNB Sioux Falls focuses on evidence that could be construed to show that FNB South Dakota deliberately and willfully disregarded the 1997

injunction. Nevertheless, FNB Sioux Falls fails to show how the district court abused its discretion in finding that the litigation over changed circumstances was more significant. In fact, in its opposition to FNB South Dakota's res judicata defense, FNB Sioux Falls itself argues strenuously that the case is dominated by changed circumstances. It was within the district court's discretion to find that, even if exceptional circumstances for purposes of § 1117 might exist in one aspect of the case, the predominance of a separate, unexceptional aspect weighed more heavily against the award of attorney's fees. As a result, the district court's denial of fees must be affirmed.

## E.    *Advisory opinion on alternative names*

FNB Sioux Falls contends in its cross appeal that the district court offered an advisory opinion that the names of FNB South Dakota's affiliates, "First National Bank of Omaha" and "First National of Nebraska," would not infringe FNB Sioux Falls' marks. In its Amended Findings of Fact and Conclusions of Law (Mar. 4, 2011), the district court stated as follows:

> Although the specific names were not litigated, it appears that the names First National Bank of Omaha or First National Bank of Nebraska, Inc., would be appropriate names to use within the eighteen-mile radius [of the injunction].

We disagree that this language constitutes an advisory opinion that the affiliate names do not infringe FNB Sioux Falls' marks. To the contrary, the district court's use of the qualifier "it appears" and its express statement that those "specific names were not litigated" indicate that the district court had no intention of making a formal finding of fact as to infringement. Moreover, the district court stated in an accompanying memorandum opinion that FNB Sioux Falls would have to bring another infringement suit based on the use of the two affiliate names in the Sioux Falls area before the district court would consider the issue.

-12-

The better reading of the challenged language, especially when read in the context of the entire document and the associated permanent injunction, is that the district court was addressing the hardship to the defendants arising from a prohibition on the use of the name "First National Bank of South Dakota" in light of the fact that other established business names currently were available to replace it. *See Taylor Corp. v. Four Seasons Greetings, LLC*, 403 F.3d 958, 967 (8th Cir. 2005) (requiring a district court to balance the threat of irreparable harm to the plaintiff against the harm that would be suffered by the defendant if a permanent injunction is granted). In particular, in the amended conclusions of law regarding the balance of harms, the district court referred back to the issue by stating that the "affected assets and personnel [of FNB South Dakota] can be utilized under a different name and trademark."

We conclude that the district court was estimating the balance of harms, rather than making a finding as to whether the names "First National Bank of Omaha" and "First National of Nebraska" infringe FNB Sioux Falls' marks. Accordingly, we decline to strike the challenged language from the district court's Amended Findings of Fact and Conclusions of Law.

## III.  Conclusion

For the foregoing reasons, we affirm.

_____