RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 12a0406p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

GEORGIA-PACIFIC CONSUMER PRODUCTS LP
and GEORGIA-PACIFIC LLC,
              *Plaintiffs-Appellants*,

    *v.*

FOUR-U-PACKAGING, INC.,
              *Defendant-Appellee*.

No. 11-4394

Appeal from the United States District Court
for the Northern District of Ohio at Toledo.
No. 3:09-cv-1071—James G. Carr, District Judge.

Decided and Filed: December 13, 2012

Before: SILER and COOK, Circuit Judges; STEEH, District Judge.[*]

_____

## COUNSEL

**ON BRIEF:** James D. Curphey, Ryan P. Sherman, PORTER, WRIGHT, MORRIS & ARTHUR LLP, Columbus, Ohio, W. Kyle Carpenter, WOOLF, McCLANE, BRIGHT, ALLEN & CARPENTER PLLC, Knoxville, Tennessee, for Appellants. Richard F. Ellenberger, Garrick O. White, ANSPACH MEEKS ELLENBERGER LLP, Toledo, Ohio, Albert P. Allan, ALLAN LAW FIRM, PLLC, Charlotte, North Carolina, Michael P. Thomas, PARICK HARPER & DIXON, LLP, Hickory, North Carolina, for Appellee.

_____

## OPINION

_____

SILER, Circuit Judge. Georgia-Pacific Consumer Products, LP asserted numerous claims against Four-U-Packaging, Inc., ("Four-U") alleging that Four-U's supply of off-brand paper towels for use in Georgia-Pacific paper-towel dispensers

---

[*]The Honorable George C. Steeh, United States District Judge for the Eastern District of Michigan, sitting by designation.

infringed on its trademarks. Four-U moved for summary judgment, arguing that the claims were barred by the ruling in a similar case brought by Georgia-Pacific in Arkansas against a different distributor of generic paper towels. The district court granted summary judgment to Four-U. For the following reasons, we **AFFIRM**.

**I.**

Plaintiffs Georgia-Pacific Consumer Products LP and Georgia-Pacific LLC (together, "Georgia-Pacific") manufacture paper-towel dispensers and disposable paper towels. In 2002, Georgia-Pacific introduced the enMotion system, which includes a touchless paper-towel dispenser and disposable paper-towel rolls designed for use in the dispenser. Both of these products are registered with the United States Patent and Trademark Office.

Georgia-Pacific leases enMotion dispensers to distributors who then sublease them to end users such as restaurants and businesses. Under this arrangement, Georgia-Pacific retains ownership of the dispensers, and end users are granted permission only to use them. The usage agreements require that enMotion dispensers be stocked exclusively with enMotion-brand paper towels.

Four-U is a seller and distributor of janitorial supplies. It distributes paper towels manufactured by the von Drehle Corporation to end users, such as restaurants and other commercial establishments. One paper towel sold by von Drehle is the 810B towel, which fits in enMotion dispensers.

Georgia-Pacific filed the underlying suit alleging that Four-U's distribution of von Drehle paper towels for use in enMotion dispensers constitutes (1) false representation and false designation of origin and dilution under the Lanham Act, 15 U.S.C. § 1125; (2) contributory trademark infringement under the Lanham Act, 15 U.S.C. § 1114; (3) counterfeiting under the Lanham Act, 15 U.S.C. § 1114(1)(a); (4) common law unfair competition; (5) tortious interference with contractual relationships; (6) tortious interference with business relationships; and (7) a violation of the Ohio Deceptive Trade Practices Act, Ohio Rev. Code §§ 4165.01 *et seq.*

Four-U moved for summary judgment on all claims, arguing that the decision in *Georgia-Pacific v. Myers Supply, Inc.*, No. 6:08-CV-6086, 2009 WL 1850324 (W.D. Ark. June 26, 2009), another case involving the distribution of off-brand paper towels for use in enMotion dispensers, precluded Georgia-Pacific's claims. The district court granted the motion.

## II.

We review a grant of summary judgment *de novo*. *Keck v. Graham Hotel Sys., Inc.*, 566 F.3d 634, 636 (6th Cir. 2009). We also review *de novo* a district court's ruling on issue preclusion. *Stemler v. Florence*, 350 F.3d 578, 585 (6th Cir. 2003).

## III.

### A. *Georgia-Pacific v. Myers Supply, Inc.*

In the Arkansas case, Georgia-Pacific sued Myers Supply, a distributor of von Drehle 810B paper towels.[1] *Georgia-Pacific v. Myers Supply*, 2009 WL 1850324, at *1. Georgia-Pacific alleged that Myers Supply's distribution of 810B papers towels to sublessees of enMotion dispensers constituted (1) false representation and false designation of origin and dilution under the Lanham Act, 15 U.S.C. § 1125(a)(1)(A); (2) trademark infringement under the Lanham Act, 15 U.S.C. § 1114; (3) counterfeiting in violation of 15 U.S.C. § 1114(1)(a); (4) common law unfair competition; (5) conversion; (6) tortious interference with contractual relationships; (7) tortious interference with business relationships; and (8) a violation of the Arkansas Deceptive Trade Practices Act. The district court granted summary judgment in part to Myers Supply and dismissed all of Georgia-Pacific's claims, except contributory trademark infringement. That claim, too, was later dismissed following a bench trial in which the

---

[1] Georgia-Pacific has filed two additional, similar cases which are not relevant to this appeal. *Georgia-Pacific v. Superior Janitor Supply*, No. 1:09-CV-323, in the Southern District of Ohio, and *Georgia-Pacific v. Inland Supply*, No. 3:09-CV-00246, in the District of Nevada, are stayed pending resolution of the appeal now before this court. A third case, *Georgia-Pacific v. von Drehle Corporation*, is discussed in Part III., Section C of this opinion.

district court found no likelihood of confusion between the two brands of paper towels.

The case was affirmed on appeal. *Georgia-Pacific Consumer Prods. LP v. Myers Supply, Inc.*, 621 F.3d 771, 779 (8th Cir. 2010). The Eighth Circuit agreed with the district court that the trademarks on enMotion towel dispensers were not "source identifying" so as to create a likelihood that commercial purchasers of the paper towels or the people using them would be confused into believing that the trademark on the paper-towel dispensers indicated the source of towels inside. The Eighth Circuit, like the district court, relied heavily upon general, pervasive industry practices of "stuffing" paper towel dispensers with generic products to conclude that there was no likelihood of confusion. *Id.* at 775. Absent a finding of confusion, the Eighth Circuit held that the district court properly dismissed Georgia-Pacific's trademark infringement claims. It also affirmed the dismissal of Georgia-Pacific's other claims.

**B. Issue preclusion.**

We must determine whether the Eighth Circuit's ruling in *Myers Supply* bars Georgia-Pacific's claims against Four-U. Issue preclusion, often referred to as collateral estoppel, "precludes relitigation of issues of fact or law actually litigated and decided in a prior action between the same parties and necessary to the judgment, even if decided as part of a different claim or cause of action." *Gargallo v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 918 F.2d 658, 661 (6th Cir. 1990). Four requirements must be met before issue preclusion applies:[2]

> (1) the precise issue must have been raised and actually litigated in the prior proceedings; (2) the determination of the issue must have been necessary to the outcome of the prior proceedings; (3) the prior proceedings must have *resulted in a final judgment on the merits*; and (4) the party against whom estoppel is sought must have had a full and fair opportunity to litigate the issue in the prior proceeding.

---

[2] Our enumeration of these factors varies slightly from case to case. However, the substance of the test, irrespective of its form, remains the same.

*Cobbins v. Tenn. Dep't of Transp.*, 566 F.3d 582, 589-90 (6th Cir. 2009) (citing *N.A.A.C.P., Detroit Branch v. Detroit Police Officers Ass'n*, 821 F.2d 328, 330 (6th Cir. 1987)).

Georgia-Pacific disputes only the first factor. Therefore, the only issue on appeal is whether the issues in *Myers Supply* and this case are identical and whether they were actually litigated and decided.

Georgia-Pacific argues that the district court improperly applied issue preclusion because differences exist between this case and *Myers Supply* in (1) the facts presented; (2) the governing law; and (3) the claims asserted. The "identity of issues" element requires that "the key issue in both cases is the same . . . ." *Nat'l Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 908-09 (6th Cir. 2001). Where a litigant brings repeated actions based upon the same operative facts, issue preclusion may still properly apply despite a change in legal theory or the "cast of characters-defendants." *Randles v. Gregart*, 965 F.2d 90, 93 (6th Cir. 1992) (citing *Hazzard v. Weinberger*, 382 F. Supp. 225, 226-29 (S.D.N.Y. 1974), *aff'd*, 519 F.2d 1397 (2d Cir.1975)).

### 1. The facts presented here and in *Myers Supply*.

*Myers Supply* and the case at bar involve (1) different defendants, each of which had a different intent with respect to the issue of actual confusion; (2) different geographic regions; and (3) different consumers. Georgia-Pacific argues that these distinctions bar application of issue preclusion.

The fact that two distinct defendants were sued in *Myers Supply* and this case has no significant bearing on whether issue preclusion applies. Because the defendant in this case is the party invoking issue preclusion, defensive collateral estoppel, rather than offensive collateral estoppel, applies. Mutuality between the parties is not required in defensive collateral estoppel cases so long as "the plaintiff has had a full and fair opportunity to litigate the contested issue previously." *McAdoo v. Dallas Corp.*, 932 F.2d 522, 523 (6th Cir. 1991). Georgia-Pacific was the plaintiff in *Myers Supply*, so the difference in defendants does not render issue preclusion inapplicable.

The intent of defendants Four-U and Myers Supply, while arguably distinct, is also inconsequential. Georgia-Pacific alleges that Four-U, unlike Myers Supply, intended to confuse customers: it purchased 810B paper towels with a plan to sell them to end-user customers leasing enMotion dispensers. Myers Supply, on the other hand, was only vaguely aware that its purchasers would stuff enMotion dispensers with 810B paper towels.

Georgia-Pacific cites to *Audi AG v. D'Amato*, 469 F.3d 534, 544 (6th Cir. 2006), for the proposition that intent may alone be sufficient to support likelihood of confusion. In *Audi AG*, however, the intent in question was that of the defendant in adopting a mark which bore the plaintiff's mark and which was displayed on the defendant's website. *Id*. In contrast, Georgia-Pacific does not allege that Four-U uses or displays enMotion's mark in any way. The relevance of *Audi AG* in this case is therefore minimal.

Even if intent alone could determine confusion, the intent of Myers Supply and Four-U are similar. Myers Supply "admitted with ninety-nine percent certainty" that the 810B paper towels it supplied to end users "would be placed in a Georgia-Pacific dispenser." *Georgia-Pacific v. Myers Supply*, No. 6:08-CV-6086, 2009 WL 2192721, at *4 (W.D. Ark. July 23, 2009). Evidence presented at trial further illustrated that Myers Supply knew its customers stuffed enMotion machines with 810B paper towels. *Id*. Finally, Myers Supply distributed 810B paper towels to sublessees of enMotion dispensers with knowledge that these customers were bound by exclusive-use contracts with Georgia-Pacific. *Id*. It is apparent that intent, although not an explicit factor within the Eighth Circuit's analysis, was in fact considered in *Myers Supply*. Georgia-Pacific's insistence that Four-U's intent distinguishes this case from *Myers Supply* is unconvincing.

The difference in geographic regions between this case and *Myers Supply* is also immaterial. Georgia-Pacific argues that the difference in location speaks directly to the question of confusion because it implicates different levels of market penetration and consumer awareness. In *Myers Supply*, Georgia-Pacific relied upon a survey focused solely on two discrete markets in Arkansas (the "Seggev" survey). Here, Georgia-

Pacific presents a new survey (the "Ford" survey), which focuses on different geographic locations. The surveys employ different methodologies, and Georgia-Pacific argues that the Ford Survey presents a new question of fact regarding actual confusion among a new group of consumers.

In support of its argument, Georgia-Pacific relies on our decision more than ninety years ago in *Auto Acetylene Light Co. v. Prest-O-Lite Co.*, 264 F. 810 (6th Cir. 1920). There, a manufacturer and distributor of acetylene gas brought suit to restrain alleged unfair competition by a rival corporation. *Id*. at 811. Auto Acetylene alleged that Prest-O-Lite recharged its containers with Auto-Acetylene gas, yet passed the products off as its own. *Id.* at 812. Nine years prior, Auto Acetylene's corporate predecessor brought identical claims against Prest-O-Lite, but the district court, having found no deception or injury to the plaintiff, dismissed the claims. *Id*. at 815. This court, adjudicating the same issue nine years later, refused to apply issue preclusion because of "materially changed conditions." *Id*. We explained that "[c]onditions not existing during the period covered by the earlier suit were not and could not have been litigated," and, therefore, "[t]he cause of action in the second suit was, in a proper sense, a *new right of action*." *Id*. (emphasis added).

While it is true that changed conditions may create a new cause of action, conditions in this case have not so dramatically changed as to trigger application of this principle. First, Georgia-Pacific's new survey does not include consumers in Ohio or Indiana, which is the region where Four-U operates. Therefore, acceptance of Georgia-Pacific's argument on this point would allow plaintiffs to avoid issue preclusion simply by conducting new customer surveys for every case brought on identical facts and issues, even where the new surveys do not represent facts unique to a new case. Parties may not create new sets of facts in such a way where the heart of their legal claims, based upon the same core facts, has already been decided.

Morever, Georgia-Pacific's reliance on *Auto Acetylene* is misplaced because the differences between *Myers Supply* and this case are subtle and do not rise to the level of constituting a new right of action. Georgia-Pacific's claims rest upon Four-U's

distribution of 810B paper towels for use in enMotion dispensers; this was the *exact* set of facts litigated in *Myers Supply*. Additional facts, such as geographic location, and for that matter, Four-U's intent, the growth of enMotion's recognition, and Ford's survey which reflects a new consumer pool, do not rise to the level of materially changed conditions which support a new cause of action. Georgia-Pacific purports to argue that because this case concerns customer confusion in northern Ohio and northeastern Indiana, the Seggev survey, which gauged confusion in Arkansas, is irrelevant. However, the new Ford survey is equally as irrelevant to this case as the Seggev survey. The Ford survey does not analyze consumer data from Ohio and Indiana, but rather analyzes consumer data samples from Arizona, California, Florida, Illinois, Massachusetts, Minnesota, New York, and Texas.

Georgia-Pacific finally contends that as "circumstances evolve over time, issue preclusion should not be invoked to deny a party its day in court," suggesting that the passage of time between *Myers Supply* and this case has automatically produced factual differences sufficient to justify reevaluation of the question of confusion. Less than one year passed between the filings of this case and *Myers Supply*, and Georgia-Pacific's argument that the facts changed so dramatically within this short period of time is unpersuasive. As such, the factual differences in defendants, surveys, geographic regions, and mark recognition are not sufficient to bar application of issue preclusion in this case.

### 2. The governing law.

Georgia-Pacific argues that the law applicable in this case is distinct from the law applied in *Myers Supply*. We resolve trademark infringement claims and unfair competition claims "on the central issue of likelihood of confusion." *Gen. Motors Corp. v. Keystone Auto. Indus., Inc.*, 453 F.3d 351, 354 (6th Cir. 2006). We employ an eight-factor test to determine the likelihood of confusion:

> 1. strength of the plaintiff's mark;
> 2. relatedness of the goods;
> 3. similarity of the marks;
> 4. evidence of actual confusion;

> 5. marketing channels used;
> 6. likely degree of purchaser care;
> 7. defendant's intent in selecting the mark; [and]
> 8. likelihood of expansion of the product lines.

*Id.* (citing *Tumblebus Inc. v. Cranmer*, 399 F.3d 754, 764 (6th Cir. 2005)) (brackets in original).  Even though we "balance these factors . . . not all of them are necessarily helpful in any given case."  *Id.* (citing *Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Ctr.*, 109 F.3d 275, 280 (6th Cir. 1997)).  The test functions "generally [as] the predominate focus of analysis," yet it "is not exhaustive, and other variables may come into play depending on the particular facts presented."  *Id*. (quoting *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348 n.11 (9th Cir. 1979))  (internal quotation marks and brackets omitted).

The Eighth Circuit, on the other hand, considers six factors when determining the likelihood of confusion:

> 1) the strength of the plaintiff's mark; 2) the similarity between the plaintiff's and defendant's marks; 3) the degree to which the allegedly infringing product competes with the plaintiff's goods; 4) the alleged infringer's intent to confuse the public; 5) the degree of care reasonably expected of potential customers; and 6) evidence of actual confusion.

*Davis v. Walt Disney Co.*, 430 F.3d 901, 903 (8th Cir. 2005) (citing *SquirtCo v. Seven-Up Co.*, 628 F.2d 1086, 1091 (8th Cir. 1990)).  The Eighth Circuit does not regard any one factor as dispositive and instead employs the factors "as a guide to determine whether a reasonable jury could find a likelihood of confusion."  *Id*.  (quoting *Duluth News-Tribune v. Mesabi Publ'g Co*., 84 F.3d 1093, 1096 (8th Cir 1996)).

Although the two tests are enumerated differently, their substance is largely identical.  Both tests consider the strength of the plaintiff's mark, the similarity of the marks, the evidence of actual confusion, the degree of purchaser care, the defendant's intent, and the relatedness (or competition) between the goods.  Only two factors from our test are unique from those of the Eighth Circuit: the marketing channels used and the likelihood of expansion of the product lines.

Even assuming that Four-U and Georgia-Pacific use identical marketing channels, the similarity is unlikely to prove that market confusion exists. Georgia-Pacific contends that "this factor alone could persuade a jury that market confusion exists," but this assertion goes too far because we weigh all the factors combined and no one factor alone is determinative of whether confusion exists. Since no single factor trumps another, the Eighth Circuit's omission of marketing channels from its analysis should not render the governing laws in *Myers Supply* and this case so different that issue preclusion cannot be applied.

Likewise, the expansion of product lines does not significantly increase the likelihood of confusion. Georgia-Pacific asserts that the expansion of enMotion's brand since its introduction in 2002 creates a new body of facts which warrants additional analysis. A "strong possibility that either party will expand his business to compete with the other or be marketed to the same consumers will weigh in favor of finding that the present use is infringing." *Daddy's Junky Music*, 109 F.3d at 287 (internal quotation marks and citation omitted). Contrary to Georgia-Pacific's argument, this factor focuses not on whether one party's market-penetration efforts entitle them to protection, but whether "there is a strong possibility that the actor and the other may become competitors by the expansion of the other's business . . . ." Restatement (First) of Torts § 731 cmt. c (1938). Viewed in this regard, Georgia-Pacific's argument misses the mark: Four-U distributes paper and janitorial supplies; it does not manufacturer commercial paper systems. Georgia-Pacific's market penetration, no matter how aggressive and successful, would not result in direct competition between the parties.

### 3. The claims asserted by Georgia-Pacific against Four-U and Myers Supply.

Georgia-Pacific argues that because it asserts Ohio state law claims and a trademark-dilution claim against Four-U, which were either not filed against Myers Supply or not analyzed by the Western District of Arkansas, the Eighth Circuit ruling cannot preclude these claims now.

Georgia-Pacific contends that two Ohio state law claims asserted here– tortious interference with contractual relationships and tortious interference with business relationships–"are patently different than the Arkansas state law claims asserted against Myers Supply." Georgia-Pacific fails to support this conclusion with any explanation of how the claims differ.

In order to prove a claim of tortious interference with contractual relationships under Ohio law, one must show "(1) the existence of a contract, (2) the wrongdoer's knowledge of the contract, (3) the wrongdoer's intentional procurement of the contract's breach, (4) the lack of justification, and (5) resulting damages." *Miami Valley Mobile Health Servs., Inc. v. ExamOne Worldwide, Inc.*, 852 F. Supp. 2d 925, 942 (S.D. Ohio 2012) (quoting *Kenty v. Transamerica Premium Ins. Co.*, 650 N.E.2d 863, 866 (Ohio 1995)) (internal quotation marks omitted). The elements of a claim for tortious interference with business relationships are almost identical, the main distinction being "that interference with a business relationship includes intentional interference with prospective contractual relations, not yet reduced to a contract." *Id.* (quoting *Diamond Wine & Spirits, Inc. v. Dayton Heidelberg Distrib. Co.*, 774 N.E.2d 775, 780-81 (Ohio Ct. App. 2002)) (internal quotation marks omitted).

In comparison, a claim under Arkansas state law for tortious interference with contractual relationships must satisfy four elements: "(1) the existence of a valid contractual relationship or a business expectancy; (2) knowledge of the relationship or expectancy on the part of the interfering party; (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resultant damage . . . ." *Vowell v. Fairfield Bay Cmty. Club, Inc.*, 58 S.W.3d 324, 329 (Ark. 2001).

Contrary to Georgia-Pacific's position, claims for tortious interference with contractual relationships and business relationships are nearly identical under Arkansas and Ohio state laws. The only distinction appears to be that Ohio law requires plaintiffs to show a lack of justification for the interference. Because Arkansas state law does not require this element be satisfied, Ohio arguably places a higher burden of proof on

plaintiffs. Georgia-Pacific unsuccessfully litigated these claims against Myers Supply in Arkansas, so its claims against Four-U under Ohio's heightened standard would certainly fail. For these reasons, the difference in state claims asserted against Four-U and Myers Supply does not prevent the application of issue preclusion.

Georgia-Pacific also insists that the *Myers Supply* court failed to address its trademark-dilution claim, thereby entitling it to litigate that claim against Four-U. The question we must answer is whether the trademark-dilution claim presented the same issue and, if so, whether that issue was actually decided. The record from *Myers Supply* answers both of these questions in the affirmative.

The issue presented in *Myers Supply* was whether the distribution of off-brand, unmarked paper towels for use in enMotion dispensers diluted Georgia-Pacific's mark. The district court dismissed this claim on summary judgment. Although the district court did not appear to have independently analyzed this claim, its dismissal was proper because it resolved the issues central to this claim. Trademark-dilution claims require comparing two marks for, among other things, distinctiveness, similarity, and actual confusion. *Victoria's Secret Stores v. Artco Equip. Co., Inc.*, 194 F. Supp. 2d 704, 729 (S.D. Ohio 2002). The focus of this analysis is whether a junior mark dilutes the distinctive quality of a senior mark. *Id.* The district court in *Myers Supply* analyzed this issue extensively in the context of Georgia-Pacific's other claims and determined that the marks bore no similarities. More importantly, the district court explained that "after the end-user places the towels in the dispenser, no Von Drehle marks remain visible." *Georgia-Pacific v. Myers Supply*, 2009 WL 2192721, at *5. Because it was apparent that Georgia-Pacific's trademark-dilution claim had no basis in the facts or law, it is understandable that the *Myers Supply* court did not analyze the claim separately. Nonetheless, this claim was litigated and actually decided, so its preclusive effect applies.

**C. Whether application of issue preclusion will result in inconsistent rulings.**

As a final matter, Georgia-Pacific argues that application of issue preclusion in this case would directly contradict a ruling by the Eastern District of North Carolina in *Georgia-Pacific v. von Drehle Corporation*. One of our primary goals in applying issue preclusion is to "foster[] reliance on judicial action by minimizing the possibility of inconsistent decisions." *Montana v. United States*, 440 U.S. 147, 153-54 (1979).

In *von Drehle*, Georgia-Pacific obtained a judgment against von Drehle. *Georgia-Pacific Consumer Prods. LP v. von Drehle Corp.*, 856 F. Supp. 2d 750, 753 (E.D.N.C. 2012). Therefore, Georgia-Pacific argues in its submitted brief that issue preclusion should not apply, since it would directly contradict the *von Drehle* judgment.

In the time that this appeal has been pending, however, the *von Drehle* ruling in Georgia-Pacific's favor has been vacated. *Id*. at 757. The district court set aside the jury verdict and dismissed all of Georgia-Pacific's claims based upon issue preclusion. *Id*. Because judgment in Georgia-Pacific's favor was set aside, application of issue preclusion in this case poses no risk of creating inconsistent rulings.

Because all of the elements of issue preclusion are met, and because applying the doctrine poses no risk of creating inconsistent rulings, Georgia-Pacific is barred from asserting its claims against Four-U.

**AFFIRMED.**